### STATE OF CONNECTICUT *v.* TEVFIK SIVRI
### (AC 16346)

O'Connell, C. J., and Lavery and Downey, Js.

---

[5] The record is devoid of any other evidence that would even arguably support a finding of breach of the peace.

Argued March 5—officially released September 9, 1997

*Pamela S. Nagy*, special assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *Jonathan C. Benedict*, assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, C. J. The defendant appeals[1] from his conviction, following a jury trial, of murder in violation

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023 and General Statutes § 51-199 (c), the Supreme Court transferred the appeal to this court.

of General Statutes § 53a-54a. Our Supreme Court reversed a previous murder conviction and remanded the case for a new trial. *State* v. *Sivri*, 231 Conn. 115, 646 A.2d 169 (1994) (*Sivri I*).

The defendant claims that the trial court improperly (1) admitted evidence of the victim's family life, (2) admitted evidence of handguns and ammunition found in the defendant's brother's room, (3) concluded there was sufficient evidence of intent to kill, (4) commented to the jury in its lesser included offense instruction, and (5) took no action concerning an improper closing argument by the state's attorney. We affirm the trial court's judgment.

*Sivri I*, supra, 231 Conn. 117–24, details the facts that the jury reasonably could have found from the evidence adduced at the defendant's first trial. We will not repeat all of the facts here; instead, we present the following summary. The victim, Carla Almeida, worked for a business known as Andre's Massage, which furnished employees to perform house call massage services at homes and hotels. On April 18, 1988, the victim went to the defendant's home in the course of her employment and was never seen again. On the basis of the circumstantial evidence detailed in *Sivri I*, the jury convicted the defendant of murder. *Sivri I* was reversed because of the trial court's failure to instruct the jury on lesser included offenses of homicide. Id., 140.

The jury in the present case could reasonably have found all the same facts relied on in *Sivri I* plus the following facts. On July 28, 1992, John Stoffan discovered a skull and portions of small bones on his thirty-seven acre property located along the Monroe Turnpike. Detective Rudy D'Ambrosio, along with other Monroe police officers, responded to Stoffan's call and found fifteen pieces of skeletal remains on the ground under pine branches. The remains were those of a female of

European origin between twenty and thirty years of age who had been dead more than one year but less than five years. A hole over the eye socket resulted from an object entering the skull and a hole in the back of the skull was caused by an object leaving the skull. These two holes are consistent with a gunshot that entered the front of the skull and exited the rear. The wound was fatal, causing the victim to die instantly or within a few minutes. Four points of comparison of the skull's lower jaw matched the victim's 1985 dental records.

In addition, during the search of the defendant's home three days after the disappearance of the victim, Officer Joseph Quartiero seized the following items from the bedroom of the defendant's brother, Revfik Sivri: (1) a loaded 6 Sauer nine millimeter pistol; (2) a loaded snub-nose .38 caliber revolver; (3) .45 caliber ammunition; (4) other calibers of ammunition in a desk drawer; (5) the frame and parts of an AMT back-up; and (6) the frame of a Colt .45 caliber automatic pistol. Additional facts are included in the analyses of individual issues.

I

The defendant claims that the trial court improperly denied his motion in limine to exclude evidence of the victim's relationship with her young son, her parents and her boyfriend. He argues that this evidence was irrelevant to the issue of guilt and was introduced solely to personalize the victim to the jury and, thus, was an improper plea for sympathy.

The defendant contends that the evidentiary basis for admitting this evidence at the first trial no longer existed. At the earlier trial, the evidence was introduced in an effort to show that because of her family ties the victim was unlikely to have just wandered off. Because the victim's body had been discovered before the commencement of the second trial, the defendant claims that evidence of her family ties was no longer relevant.

The state claims that the purpose of the evidence was to show not only that the victim was dead, but that she was murdered on April 18, 1988, at the defendant's residence in Trumbull. Because the victim's remains were found in another town four years after her disappearance, the state still had the burden of proving where and when she died. Accordingly, evidence that she was not the type of person who would leave her family and wander off was still relevant.

Admissible evidence need not be conclusive as to the fact that the offerer is seeking to prove. All that is required is that the proffered evidence tends to support a relevant fact. *State* v. *Miller*, 202 Conn. 463, 482, 522 A.2d 249 (1987). Evidence of the victim's family life together with other circumstantial evidence reasonably could be found by the jury to support the state's claim that the victim died on April 18, 1988, at the defendant's home.

The trial court has broad discretion in ruling on relevancy issues. *State* v. *Santiago*, 224 Conn. 325, 326, 618 A.2d 32 (1992). We will not disturb a trial court's discretionary ruling unless a clear abuse of discretion is shown. *State* v. *Bember*, 183 Conn. 394, 408, 439 A.2d 387 (1981). We are not persuaded that the denial of the defendant's motion in limine was an abuse of the trial court's discretion.

The defendant also argues that, even if the family ties evidence was relevant, it should have been excluded because its prejudicial effect outweighed its probative value. *State* v. *DeMatteo*, 186 Conn. 696, 702–703, 443 A.2d 915 (1982). "Prejudice is not measured by the significance of the evidence which is relevant but by the impact of that which is extraneous." Id., 703. The evidence at issue was not extraneous but, as we have held, was relevant and tended to prove an issue at trial.

Applying this standard, we determine that the court's ruling was proper.

Furthermore, the trial court gave an appropriate cautionary jury instruction.[2] Unless there is a clear indication to the contrary, a jury is presumed to follow the court's instructions. *State* v. *Negron*, 221 Conn. 315, 331, 603 A.2d 1138 (1992). Additionally, when a claimed error does not involve a constitutional issue, the burden is on the defendant to demonstrate that it is more probable than not that improper action of the court affected the result. *State* v. *Willis*, 221 Conn. 518, 525, 605 A.2d 1359 (1992). The defendant has not sustained this burden.

II

The defendant next complains that the trial court abused its discretion by admitting evidence that several large caliber handguns and ammunition were found in his home. The trial court allowed Quartiero to testify concerning his participation in a search of the defendant's home and his finding guns and ammunition in the bedroom of the defendant's brother. In addition, the trial court permitted the admission into evidence of photographs of the guns.

The defendant argues that the admission of this evidence was improper because it allowed evidence and testimony concerning seized articles that tended to indicate criminal propensity when those articles were not connected to the commission of the crime charged. *State* v. *Mozell*, 36 Conn. App. 672, 677, 652 A.2d 1060 (1995). The defendant argues further that the admission

---

[2] The trial court's cautionary jury instruction was as follows: "I instruct you that the evidence of [the victim's] relationships may only be considered by you in resolving the question of whether she was killed or whether she simply became a missing person on the day in question. You may, under no circumstances, let sympathy or emotion cloud your judgment as fair and impartial fact finders."

of such evidence is analogous to "other crimes" evidence and would lead the jury to view the defendant and perhaps his family as violent and prone to criminal activities. The defendant contends that the trial court allowed the jury to guess, surmise and speculate that the guns in the defendant's brother's room were those used in the victim's homicide. He claims that the sheer proximity of the guns to the defendant created the unjustified conclusion that the defendant, having the means to commit the crime, must have done so.

The defendant relies on *State* v. *Ferraro*, 160 Conn. 42, 46, 273 A.2d 694 (1970), which held that evidence of the discovery of pistols, ammunition and a ski mask in the defendants' apartment permitted speculation that the defendants used those items to attack the victims. The court in *Ferraro* simply found that there was an insufficient connection between the paraphernalia found in the apartment and that used in perpetrating the crime. Id.

The state argues in the present case that there was a sufficient nexus between the guns, the defendant and the crime. The purpose of this evidence was to show that the defendant had the means to commit the murder. "Evidence indicating that an accused possessed an article with which the particular crime charged may have been accomplished is generally relevant to show that the accused had the means to commit the crime." *State* v. *Villafane*, 171 Conn. 644, 675, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977). The state does not have to connect a weapon directly to the defendant and the crime. It is necessary only that the weapon be suitable for the commission of the offense. *People* v. *Free*, 112 Ill. App. 3d 449, 461, 445 N.E.2d 529, cert. denied, 464 U.S. 865, 104 S. Ct. 514, 78 L. Ed. 2d 701 (1983).

In *State* v. *Villafane*, supra, 171 Conn. 675–76, the Supreme Court found that evidence of the defendant's

possession of a handgun one day after the shooting permitted the jury to infer that the defendant possessed the gun the day earlier. Here, the search of the defendant's home only three days after the disappearance of the victim revealed several guns and ammunition. We are satisfied that the discovery of the evidence was sufficiently close in time to the disappearance of the victim to comport with *Villafane*.

"Evidence is not inadmissible because it is not conclusive; it is admissible if it has a tendency to support a fact relevant to the issues if only in a slight degree." *State* v. *Miller*, supra, 202 Conn. 482. In *Miller*, the assailant used handcuffs during the assault, and testimony was admitted that the handcuffs had been supplied to a federal correctional institution where the defendant, who was a federal prison guard, may have had access to them.[3] Here, the state demonstrated that the victim lost a large quantity of blood in the defendant's family room. Further, the holes in the victim's skull indicate that she was killed with a large caliber handgun. We conclude, therefore, that there was a sufficient connection between the murder charge and the proffered exhibits.

The defendant claims that the admission of the evidence regarding the guns and ammunition was unduly prejudicial. Whether this evidence was prejudicial was a matter for the trial court's discretion. See our discussion of prejudicial evidence in part I of this opinion. We may not reverse a conviction because of the erroneous admission of evidence unless the defendant demonstrates that the abuse of discretion was manifest or where an injustice appears to have been done. *State* v. *Willis*, supra, 221 Conn. 522. The defendant has not demonstrated an abuse of discretion or that the admission of the contested evidence caused injustice.

---

[3] See *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 753, 700 A.2d 1108 (1997).

## III

The defendant's third claim is that the evidence was insufficient to prove beyond a reasonable doubt that he possessed the specific intent to cause the death of the victim. The identical issue was considered by the Supreme Court in *Sivri I*, supra, 231 Conn. 126–37. On less evidence than was presented in the case now before us, the Supreme Court held that "[a]lthough the evidence certainly did not mandate an inference of an intent to kill, we conclude that [all of the permissible inferences] taken together . . . [reasonably support] the inference of an intent to kill that the jury drew." Id., 130. Two justices dissented from that holding, and the defendant asks us to adopt the dissenting view. This would require us to overrule the majority, which we are powerless to do.[4] This court will not reexamine or reevaluate Supreme Court precedent. *State* v. *Wilson*, 17 Conn. App. 97, 98 n.1, 550 A.2d 21 (1988).

Because we are bound by the majority decision in *Sivri I*, independent analysis by this court on the intent issue would be a futile endeavor.

## IV

In his fourth claim, the defendant argues that, during the trial court's instruction on lesser included offenses, it improperly informed the jury that it was obligated under the law to give the lesser included offense instructions. The defendant also complains that the trial court instructed the jury six times that it could not consider the lesser included offenses unless it first found the

---

[4] The defendant's argument was viable while this appeal was pending before the Supreme Court because that court could have reconsidered the issue of intent. That viability evaporated, however, when the appeal was transferred to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

defendant not guilty of murder. The defendant further claims that the judge revealed his opinion that the state sustained its burden of proving murder when he stated "[b]ecause the killing of one human being by another is so abhorrent to us we invariably, when faced with the facts indicating such a killing, begin to wonder why it was done. What led one person to snuff out another's life." The defendant argues that the multiple instruction on the consideration of the lesser included offense, together with this comment, deprived the defendant of a fair trial.

The defendant did not object to the trial court's instructions and seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[5] claiming that the jury instructions infringed on his due process right to a fair trial before an impartial judge and jury. The defendant also seeks plain error review of this claim pursuant to Practice Book § 4061 (formerly § 4185), contending that the instructions affected "the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Boles*, 223 Conn. 535, 551, 613 A.2d 770 (1992).

As to the trial court's comments that it was obligated under the law to instruct the jury on the lesser included offenses, we conclude that this instruction was a correct statement of law, and was adapted to the facts and gave the jury a clear understanding of what it had to decide. *State* v. *Avila*, 223 Conn. 595, 602, 613 A.2d 731 (1992).

---

[5] *State* v. *Golding*, supra, 213 Conn. 239–40, held that a party can prevail on a claim not adequately presented at trial only if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

The state argues, and we agree, that when the trial court instructed the jury that it must first find the defendant guilty or not guilty of murder, before considering any lesser offenses, it correctly stated the law as set forth in *State* v. *Sawyer*, 227 Conn. 566, 579, 630 A.2d 1064 (1993). In *Sawyer*, our Supreme Court concluded that "to ensure that the charged offense has been determined by unanimous agreement, the court must direct the jury to reach a unanimous decision on the issue of guilt or innocence of the charged offense before going on to consider the lesser included offenses." Id., 579. The trial court also informed the jurors that because they were given instructions on lesser offenses, this should not be interpreted by them to indicate how the trial court viewed the evidence.

A jury instruction is constitutionally adequate if it provides the jury with a clear understanding of the elements of the crime charged, and affords it proper guidance for its determination of whether those elements are present. *State* v. *Wood*, 208 Conn. 125, 132, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988). The state argues that the evidence was sufficient to sustain the verdict and the defendant is not challenging the instructions on the charge of murder, of which the jury found him guilty. Therefore, the state maintains that the defendant has failed to demonstrate any constitutional violation that warrants further review. Moreover, unless there is a clear indication to the contrary, a jury is presumed to follow the court's instructions. *State* v. *Negron*, supra, 221 Conn. 331. Accordingly, we conclude that the trial court's instructions were constitutionally proper and do not merit *Golding* review.

As to the trial judge's comment about "snuffing out" a life, the defendant points out that a trial judge has a responsibility to conduct the trial fairly and impartially,

and he "should be cautious and circumspect in his language and conduct." *State* v. *Fernandez*, 198 Conn. 1, 10, 501 A.2d 1195 (1985). A trial judge "must refrain from making remarks which are indicative of favor or condemnation or which disparage a defendant before the jury." Id., 12. The defendant contends that the judge's comments indicated his own personal opinion about the defendant and " 'practically told the jury how to decide disputed issues of fact and thus exceeded its power to comment on the evidence.' " *Enlund* v. *Buske*, 160 Conn. 327, 332, 278 A.2d 815 (1971). He also contends that the trial court failed to instruct the jury in a neutral and detached manner.

After reviewing the record, we conclude that the trial court's comment about what leads a person to "snuff out" another person's life did not deprive the defendant of a fair trial. The transcript reveals that, in context, the comment was appropriate because the trial court was instructing the jury that motive was not an element of the crime of murder. Essentially, the trial court was explaining that it was understandable that the jurors may wonder why the defendant did what he did, but that motive was not a necessary factor in their deliberations. This instruction was legally correct and did not indicate condemnation or disparagement of the defendant. *State* v. *Avila*, supra, 223 Conn. 602.

We turn now to the defendant's plain error claim. Where a claimed error of a nonconstitutional nature is not brought to the attention of the trial court, appellate review is available only if it constitutes plain error. *Kolich* v. *Shugrue*, 198 Conn. 322, 326, 502 A.2d 918 (1986). To prevail under the plain error doctrine, the defendant must demonstrate that the "claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest justice." *State* v. *Day*, 233 Conn. 813, 849, 661 A.2d 539 (1995). This doctrine is not even implicated and review of the

claimed error is not undertaken "unless 'the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " Id., quoting *State* v. *Boles,* supra, 223 Conn. 551. Furthermore, even if the error is so apparent and review is afforded, the defendant cannot prevail on the basis of an error that lacks constitutional dimensions unless he demonstrates that it "likely affected the result of his trial." *State* v. *Day,* supra, 850. The defendant has not demonstrated that the claimed error has affected the result of his trial.

Because the jury was properly instructed, we conclude that the defendant has not demonstrated manifest injustice. "Where a trial court's action does not result in any manifest injustice, a defendant's claim under the plain error doctrine does not warrant review." *State* v. *Wright,* 207 Conn. 276, 288, 542 A.2d 299 (1988).

V

Finally, the defendant claims that the remarks made by the prosecutor during the closing argument deprived him of a fair trial because, during its closing argument, the state improperly (1) suggested that the defendant had a duty to present evidence,[6] (2) referred to facts not in evidence, and (3) appealed to the jurors' emotions. The defendant concedes that he did not object to the state's closing argument, but seeks review of this claim under *State* v. *Golding,* supra, 213 Conn. 239.

"[P]rosecutorial misconduct of constitutional proportions may arise during the course of closing argument . . . ." *State* v. *Somerville,* 214 Conn. 378, 393, 572 A.2d 944 (1990). "[T]he touchstone of due process analysis

---

[6] The defendant also mentions that the prosecutor improperly suggested that the defendant had a duty to testify, but he does not develop this claim. We note that the prosecutor did not comment directly on the defendant's duty to present any evidence.

in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor." *Smith* v. *Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). The issue is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987). "We must, therefore, determine whether the remarks of the prosecutor, in light of all the circumstances, including the trial court's charge, were so egregious and so damaging to the defendant that they deprived him of a fair trial." *State* v. *Richardson*, 214 Conn. 752, 761, 574 A.2d 182 (1990).

A

The defendant first claims that the state improperly shifted the burden of proof by stating in the closing argument that "I really am not yet, to be honest with you, clear on how the defense claims that manslaughter fits under the facts of this case." During the state's rebuttal, the prosecutor again discussed the issue of manslaughter and the defendant's claim that he did not intend to kill the victim, arguing that "[o]n what evidence the defense bases this I don't know. I have yet to see it." The defendant likens these statements to those in *State* v. *Williams*, 41 Conn. App. 180, 186–87, 674 A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996), in which a prosecutor attacked the defendant's alibi, stating that the defendant was really stretching because he had nothing else to go with, and that he failed to present evidence to show that he was elsewhere. "Once an alibi defense is raised in Connecticut, the state bears the burden of disproving it." Id., 186. The issue here, however, does not involve an alibi; it involves the issue of whether the defendant intended to kill the victim. *Williams*, therefore, is inapposite.

We have already determined that the state presented sufficient evidence for the jury reasonably to conclude that the defendant intended to kill the victim. In his closing argument, the defendant sought to discount this evidence and argued that the state did not meet its burden on the element of intent to kill, and argued instead that the jury should consider manslaughter. The state, in rebuttal, addressed this contention, arguing that it did not fit into the evidence that the state had presented. Having examined this claim in context, we conclude that the state properly argued that the evidence demonstrated that the defendant intended to kill the victim, despite the interpretations of the facts that the defendant might argue.

B

Second, the defendant claims that the prosecutor improperly commented on facts not in evidence. Specifically, the defendant argues that instead of offering evidence as to what kinds of guns constituted large caliber weapons, the prosecutor provided his own expertise during closing argument that several of the defendant's brother Revfik Sivri's guns were large caliber weapons and, therefore, could be the murder weapon.

The defendant claims that the prosecutor improperly referred to the guns found in the house as "large caliber" without presenting expert testimony classifying the guns seized as large caliber. There was no evidence that the wound inflicted on the victim in the defendant's home was from a large or small caliber gun, only that the victim suffered a considerable wound that caused a substantial loss of blood. We conclude that the prosecutor's reference to the large caliber guns was of no consequence and did not prejudice the defendant or deprive him of a fair trial.

In addition, the defendant claims that the prosecutor improperly described the defendant's family as a "close-knit family" that would help out other family members

in need, and, further, suggested the various actions of the family members to assist the defendant. These suggestions, the defendant claims, are that the defendant and his brother Adnan Sivri disposed of the victim's car, that the defendant's brother Revfik Sivri drove the defendant to Canada and that the Sivri family cleaned up the family room and shampooed the rug.

The prosecutor recounted the evidence that Adnan Sivri would not allow the police to enter the family home and when the police asked the defendant's mother if they could enter the house, she clutched her chest and fell to the ground. The prosecutor then reminded the jury that Adnan Sivri refused medical assistance for his mother that was offered by the Trumbull police. The prosecutor pointed out to the jury that the evidence demonstrated that Adnan Sivri left work at 5 p.m. and, because it would take two people to dispose of the victim's van, was available to help the defendant dispose of the victim's van. The prosecutor then mentioned the defendant's flight to Turkey through Canada and the role, again inferentially, that Revfik Sivri had in that action.

We conclude that the prosecutor properly tied the evidence together in his closing argument and addressed the defendant's argument that the evidence clearly demonstrated that the defendant was not alone when the victim was shot. We are not persuaded that the prosecutor did anything more than argue permissible inferences from the evidence. Accordingly, the trial court did not improperly fail to correct or to cure the alleged prosecutorial misconduct.

## C

Third, the defendant claims that the prosecutor unfairly appealed to the jurors' emotions and diverted their attention with extraneous matters. Specifically,

the defendant claims that throughout the closing argument, the prosecutor made comments intended to incite the jurors' passions, characterized the defendant's family as close-knit and reminded the jury that there was "a veritable arsenal up in one of the bedrooms" of the defendant's house. The prosecutor noted that murder victims are "rendered permanently mute by the very conduct of the defendant that puts us all here in this room in the first place." The prosecutor reminded the jury of the victim's caring family. Finally, the prosecutor ended his argument by saying that the evidence did not support a manslaughter conviction, and, "[i]f you care to give this plea more than a moment's thought, think first of the mercy he showed [the victim] when he fired that bullet through that young mother's skull. Ladies and gentlemen, plain and simple, that's as vicious as it gets."

"A prosecutor may not appeal to the emotions, passions and prejudices of the jurors." *State* v. *Williams*, supra, 204 Conn. 545. We have stated that such appeals should be avoided because they "have the effect of diverting the jury's attention from their duty to decide the case on the evidence." (Internal quotation marks omitted.) Id. "An appeal to emotions may arise directly, or indirectly from the use of personal and degrading epithets to describe the defendant. . . . Although a state's attorney may argue that the evidence proves the defendant guilty, he may not stigmatize the defendant by the use of epithets which characterize him as guilty before an adjudication of guilt." Id., 545–46. In *Williams*, however, the prosecutor repeatedly referred to the defendant as a coward, child beater, baby beater, and infant thrasher, and an evil man. The court in *Williams* concluded that it was "reasonably possible that this continuous use of invective would have the improper effect of appealing to the emotions and prejudices of the jury." Id., 547.

In the present case, however, the prosecutor's closing argument did not include any epithets. The prosecutor's pleas and characterization of the defendant's conduct as vicious was not unreasonable because the prosecutor presumed that the jury believed the evidence that the defendant shot the victim once when she was in his home and again while she lay in the trunk of his car. The prosecutor permissibly argued that the evidence that the state presented did not support a manslaughter conviction, and attempted to persuade the jury that if it agreed with the state's interpretation of the evidence, it should return a murder conviction, not a manslaughter conviction.

"An unpreserved prosecutorial misconduct claim is not reviewable if the claimed misconduct consisted of isolated and brief episodes [that] did not reveal a pattern of conduct repeated throughout the trial or conduct that was not blatantly egregious." *State* v. *Henry*, 27 Conn. App. 520, 529, 608 A.2d 696 (1992). "In determining whether a prosecutor's conduct was so egregious as to deny a defendant a fair trial, we note that some leeway must be afforded to the advocates in offering arguments to the jury in final argument." *State* v. *Hansen*, 39 Conn. App. 384, 395, 666 A.2d 441, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). We conclude that, in the context of the entire trial, the prosecutor's comments did not deprive the defendant of a fair trial. *State* v. *Richardson*, supra, 214 Conn. 759–60.

The judgment is affirmed.

In this opinion LAVERY, J., concurred.

DOWNEY, J., concurring. I write separately to indicate my belief that *State* v. *Sivri*, 231 Conn. 115, 646 A.2d 169 (1994), does not preclude this court from reviewing the defendant's claim of insufficiency of evidence. Because I believe, however, there was sufficient

evidence admitted in the defendant's second trial to support the jury's verdict, I agree with and join the majority opinion.