STATE OF CONNECTICUT *v.* JERRY ROSARIO
(AC 27374)

Flynn, C. J., and McLachlan and West, Js.

Argued October 17, 2006—officially released January 9, 2007

*Auden Grogins*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *David Shepack*, state's attorney, and *Dawn M. Gallo*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Jerry Rosario, appeals from the judgment of conviction rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2)[1] and 53a-54a,[2] and assault

---

[1] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person,

in the first degree in violation of General Statutes § 53a-59.[3] On appeal, the defendant claims that the trial court improperly (1) admitted evidence, through the testimony of two witnesses, of uncharged misconduct and (2) limited the admissibility of a witness' prior inconsistent statement for impeachment purposes only, in violation of the defendant's constitutional right to present a defense, which includes the right to present substantive evidence of third party culpability.

We conclude that the court properly admitted testimony concerning the defendant's possession on prior occasions of the particular handgun used to commit the charged crimes. We further conclude that the court properly admitted a witness' out-of-court, prior inconsistent statement, which included a statement made to the witness by another person, for the limited purpose of impeachment and not for the substantive purpose of proving third party culpability. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 12, 2003, the defendant drove his then girlfriend, Kristina Monterio, and her brother, Gino

he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

[3] General Statutes § 53a-59 (a) provides: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person; or (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person; or (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

Monterio, to Charlotte Hungerford Hospital in Torrington so that Gino Monterio could be admitted into the hospital's substance abuse detoxification program. After learning that the hospital would not admit him for several hours, Gino Monterio telephoned Michael Haskill, looking for narcotics because Haskill, who also was involved in a romantic relationship with Kristina Monterio, frequently supplied Gino Monterio with drugs. On that particular day, Gino Monterio was unsuccessful in his quest to obtain narcotics from Haskill.

Thereafter, the defendant, together with Gino Monterio and Kristina Monterio, left the hospital and went to a liquor store. While Gino Monterio was inside the liquor store, the defendant attempted to park his motor vehicle. However, in doing so, the defendant's motor vehicle almost collided with a motor vehicle driven by Eric Hoenig, in which Steven Hill was a passenger. Hoenig and Hill were on their way to procure drugs at Haskill's house, which was located around the corner from the liquor store. A verbal confrontation ensued between the defendant and Hill, prompting Gino Monterio to exit the liquor store to determine the cause of the altercation. Gino Monterio, who was acquainted with Hill, then walked with Hill around the corner toward Haskill's house as the defendant followed them in his motor vehicle.

Because Haskill was awaiting the arrival of Hill, he was standing outside his residence. Haskill became upset when he observed Gino Monterio accompanying Hill because he did not like people to know where he resided. Soon after Hill and Gino Monterio arrived at Haskill's house, Haskill noticed the defendant approaching. The defendant and Haskill had exchanged words in the past concerning the romantic relationship that each had with Kristina Monterio.

Haskill then approached his motor vehicle, a Dodge Neon, which was parked in his driveway, and sat in the

driver's seat. While Haskill was sitting in the Dodge Neon, he was shot in the head with a .45 caliber handgun. A shell casing from a .45 caliber handgun was recovered by the police department on the passenger side of the Dodge Neon.

The state charged the defendant with attempt to commit murder in violation of §§ 53a-49 (a) (2) and 53a-54a, assault in the first degree in violation of § 53a-59 and two counts of commission of a class B felony with a firearm in violation of General Statutes § 53-202k.[4] At trial, the state presented several witnesses, including Haskill, who testified that the defendant was the shooter.

Gino Monterio testified that after the defendant arrived at Haskill's house, Gino Monterio observed the defendant approach the driver's side of the Dodge Neon with his handgun drawn. The defendant then pointed the handgun at Haskill's head and fired. After the shooting, Gino Monterio approached the Dodge Neon, observed Haskill's injuries and then fled from the scene with the defendant. Gino Monterio further testified that, although he had not seen the .45 caliber handgun in the defendant's possession on that day prior to the shooting, he had seen it in the defendant's possession on prior occasions.

Hill also provided testimony connecting the defendant to the shooting of Haskill. According to Hill, after Haskill sat in the driver's seat of the Dodge Neon, the defendant proceeded up Haskill's driveway, reached

---

[4] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

into his pocket and produced a handgun. From his vantage point alongside the passenger side of the Dodge Neon, Hill observed the defendant, who was standing adjacent to the driver's side, shoot Haskill. Hill also testified that Gino Monterio was standing near him when this incident occurred. After Gino Monterio and the defendant departed from Haskill's house, Hill approached the Dodge Neon, observed the nonresponsive Haskill and left the scene. Hill further testified that after the shooting, he telephoned his girlfriend, Shannon Roche, but he did not tell her that Gino Monterio had shot Haskill.

Haskill testified that as he was sitting in the driver's seat of the Dodge Neon, the defendant approached the driver's side, opened the door and shot him in the face with a handgun. Haskill testified that he was positive that the defendant was the person who shot him. Haskill stated that at the time of the shooting, Gino Monterio was standing on the passenger side of the Dodge Neon. Haskill also testified that he had seen the handgun that the defendant used to commit the crime in the defendant's possession on prior occasions.

The defendant presented Roche as one of his witnesses, and, on direct examination, defense counsel questioned her about a statement that she had made to the police, detailing the telephone conversation she had had with Hill after the shooting. Roche testified that when Hill telephoned her on the night of the shooting, he was crying. During her direct testimony, Roche denied having informed the police that Hill had told her that Gino Monterio had shot Haskill and instead claimed that she had told the police that "Gino's boy" had shot Haskill. Consequently, defense counsel produced Roche's written police statement, in which she reported that Hill had told her that Gino Monterio had shot Haskill. After rereading her written and signed police statement, Roche again denied telling the police

that Gino Monterio had shot Haskill and continued to assert that she had told the police that Hill had said that "Gino's boy" was responsible for shooting Haskill.

Thereafter, defense counsel offered into evidence, as a prior inconsistent statement, Roche's written police statement, and the prosecutor objected. Outside of the jury's presence, the prosecutor argued that if Roche's prior inconsistent statement was admitted, then the proffered evidence should be admissible only for the purposes of impeachment and further contended that the court should instruct the jury that it could not consider the prior inconsistent statement for substantive purposes. In response, defense counsel argued that in addition to impeachment purposes, Roche's prior inconsistent statement also should be admitted substantively to establish third party culpability. The court then ruled that it would allow the admission of the prior inconsistent statement to impeach the testimony of both Hill and Roche and would provide a limiting instruction to the jury. Following the return of the jury, Roche testified that Hill told her that "Gino's boy" shot Haskill, and she denied reporting to the police that Hill had stated that Gino Monterio shot Haskill. Defense counsel then introduced Roche's statement as a prior inconsistent statement, and the court instructed the jury that it could consider Roche's prior statement for the limited purpose of determining the credibility of Hill and Roche and not for the truth of the matter asserted.

Subsequently, on May 7, 2004, the jury returned a guilty verdict on all counts, but on October 19, 2004, the court vacated, sua sponte, the guilty verdicts on the two counts of commission of a class B felony with a firearm.[5] The court also denied the defendant's motions

[5] Pursuant to State v. Dash, 242 Conn. 143, 149–50, 698 A.2d 297 (1997), in which our Supreme Court concluded that § 53-202k is a sentence enhancement provision and not a separate crime, the trial court determined that the defendant in the present case was entitled to have his conviction under the two counts of § 53-202k vacated.

for a judgment of acquittal and for a new trial. Thereafter, on the offense of attempt to commit murder, the court sentenced the defendant to nineteen years to serve plus five years enhancement because of the use of a gun. On the first degree assault count, the court also imposed a sentence, to run concurrently to the sentence for attempt to commit murder, of nineteen years to serve plus five years enhancement for a total effective sentence of twenty-four years incarceration. This appeal followed.

I

The defendant first claims that the court improperly permitted the state to present evidence, through the testimony of Haskill and Gino Monterio, of alleged prior misconduct. Specifically, the defendant argues that the court improperly admitted evidence that the defendant had the same gun, which was used to commit the charged crimes, in his possession on prior occasions because such evidence tended to show criminal propensity, was not relevant and was prejudicial.[6] The state

---

[6] In this appeal, the defendant challenges the admission of the evidence relating to his possession of the gun on prior occasions, which was elicited in the testimony of both Gino Monterio and Haskill. Although the defendant preserved for review his claim that the court should not have permitted Gino Monterio to testify, the defendant failed to object at trial to Haskill's testimony. As a result, we will not review the defendant's unpreserved claim that the court improperly allowed Haskill to testify about his observations of the defendant carrying the gun on prior occasions. The defendant asserts, however, that this claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because the improper admission of the evidence deprived him of his constitutional right to a fair trial. We are not persuaded by the defendant's attempt to "clothe an ordinary evidentiary issue in constitutional garb to obtain appellate review." (Internal quotation marks omitted.) *State* v. *Warren*, 83 Conn. App. 446, 452, 850 A.2d 1086, cert. denied, 271 Conn. 907, 859 A.2d 567 (2004); see also *State* v. *Izzo*, 82 Conn. App. 285, 291 n.2, 843 A.2d 661 ("[R]obing garden variety claims [of an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature. . . . Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender." [Internal quotation marks omitted.]), cert. denied, 270 Conn. 902, 853 A.2d 521 (2004). Accordingly,

argues that the court did not abuse its discretion by admitting the testimony because it was relevant to demonstrate that the defendant had the means to commit the crimes charged. The state further argues that the evidence did not prejudice the defendant. We agree with the state.

On appeal, the parties briefed the issue regarding the admissibility of the evidence of the defendant's prior possession of the gun as prior misconduct evidence, but, at trial, the parties did not refer to the evidence as prior misconduct evidence. However, whether one characterizes the court's action with respect to the evidence of the defendant's prior possession of the gun as a simple improper admission of evidence or as an improper admission of prior misconduct, which is a specific type of evidence, the analysis is the same. In each case, we look to the relevance of the evidence and to whether the probative value of the evidence outweighed its potential prejudicial effect.[7]

In assessing a defendant's claim of improper admission of evidence, we employ the following standard of

we review only the claim concerning the evidence procured from Gino Monterio's testimony, which the defendant preserved for appellate review.

[7] "As a general rule, evidence of a defendant's prior crimes or misconduct is not admissible. . . . We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . .

"To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Cooper*, 227 Conn. 417, 424–25, 630 A.2d 1043 (1993).

"The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) Id., 426–27.

review. "The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . .

"Relevant evidence, that is, evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence . . . generally is admissible . . . unless its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time or needless presentation of cumulative evidence." (Internal quotation marks omitted.) *State* v. *Ritrovato*, 280 Conn. 36, 50–51, 905 A.2d 1079 (2006).

During the direct examination of Gino Monterio and prior to the court's ruling on the evidence, the state made an offer of proof, outside of the jury's presence, concerning the admission of the evidence. The following exchange occurred:

"[The Prosecutor]: What I want to ask the witness, Your Honor, is, had you ever seen that gun before?

"[The Witness]: Yes.

"[The Prosecutor]: And under what circumstances—

"[Defense Counsel]: Seen what?

"The Court: The gun."

Outside of the jury's presence as part of the offer of proof, Gino Monterio then testified that the defendant had the same handgun on his person, daily, in the weeks

prior to the shooting for self-protection. He also testified that he had seen the defendant in possession of other shotguns and ammunition prior to the shooting of Haskill.

The prosecutor then advised the court that "for the purposes of the jury trial, I would claim and wish to elicit before the jury the fact that it was [the defendant's] habit and custom to carry that handgun." Defense counsel argued that what would be relevant was what happened on the day of the shooting and that the defendant's possession of the gun on prior days was irrelevant and prejudicial.

After considering the arguments from both parties, the court allowed Gino Monterio to testify about whether he had seen the particular handgun used in the shooting in the possession of the defendant on previous occasions but not about any other guns or ammunition.

Then, Gino Monterio testified before the jury as follows:

"[The Prosecutor]: The gun that [the defendant] had, had you seen that particular gun before?

"[The Witness]: Yes, weeks prior.

"[The Prosecutor]: Weeks prior? How many times had you seen that particular gun?

"[The Witness]: Every day.

"[The Prosecutor]: Under what circumstances?

"[The Witness]: For protection for himself.

"[The Prosecutor]: [The defendant] would carry that gun?

"[The Witness]: Yes."

The state argues that Gino Monterio's testimony was relevant to demonstrate that the defendant had the

means to commit the charged crimes. Moreover, the state argues that the evidence did not prejudice the defendant. We agree with the state.

First, we examine the relevance of the evidence. Section 4-1 of the Connecticut Code of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." It is well established that "[e]vidence indicating that an accused possessed an article with which the particular crime charged may have been accomplished is generally relevant to show that the accused had the means to commit the crime." (Internal quotation marks omitted.) *State* v. *Sivri*, 46 Conn. App. 578, 584, 700 A.2d 96, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997).

In *State* v. *Sivri*, supra, 46 Conn. App. 584, this court held that the defendant's brother could testify as to the existence of several large caliber handguns and ammunition in the defendant's home that he shared with his brother because such evidence was relevant to show that the defendant had the tools necessary to commit the charged offense of murder. See also *State* v. *Stevenson*, 53 Conn. App. 551, 570–73, 733 A.2d 253 (witness' testimony about her observations of defendant in possession of same type of handgun used to kill victim was relevant), cert. denied, 250 Conn. 917, 734 A.2d 990 (1999).

On the basis of our review of the record, we conclude that the court did not abuse its discretion in determining that the evidence pertaining to the defendant's possession of the handgun was relevant to the present case. Testimony at trial indicated that a shell casing from a .45 caliber handgun was recovered near the passenger side of the Dodge Neon, and Gino Monterio testified

that he had seen the .45 caliber handgun that the defendant used to shoot Haskill in the defendant's possession on previous occasions. The court properly admitted Gino Monterio's testimony because it helped the state prove that the defendant had the means necessary for committing the charged crimes. In addition, the evidence was relevant to the state's case because it helped to establish the elements of the crimes charged.

This court, in *State* v. *Sivri*, supra, 46 Conn. App. 584, held that the trial court did not abuse its discretion in permitting a witness to testify about the presence of large caliber firearms in the defendant's home before the commission of the crime, even though there was no testimony connecting a particular gun seen in the home on a prior occasion to the gun used to commit the charged crime. In the present case, the connection between the gun used to commit the crime and the defendant is even stronger than in *Sivri* because testimony linked the gun seen on prior occasions to Haskill's shooting. The jury could infer, on the basis of this evidence, that the defendant used the same gun that Gino Monterio previously had seen in the defendant's possession to commit the charged crimes.

We next examine whether the prejudicial effect of the admission of Gino Monterio's testimony relating to the defendant's gun possession outweighed its probative value. "[E]vidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *Bennett-Gibson*, 84 Conn. App. 48, 66,

851 A.2d 1214, cert. denied, 271 Conn. 916, 859 A.2d 570 (2004).

We conclude that the court carefully and properly balanced the probative value of the evidence of the defendant's prior possession of the same handgun used in the charged crimes against its prejudice to the defendant. Moreover, to minimize any prejudice to the defendant, the court limited the state's inquiry concerning the defendant's possession of firearms to the solicitation of evidence regarding the defendant's prior possession of the particular handgun used in the charged crimes.[8] The court did not allow Gino Monterio to testify about how he had observed the defendant in possession of a shotgun and ammunition clips in Kristina Monterio's apartment on an occasion prior to the shooting. In addition, in the presence of the jury, Gino Monterio testified only that he had seen the defendant previously with the gun that was used in the shooting and that the defendant used the gun for the purpose of protection. We conclude that the court did not abuse its broad discretion.[9]

---

[8] The defendant also claims that the prejudicial impact of Gino Monterio's testimony was magnified by the failure of the court to instruct the jury that it was prohibited from using the evidence to infer that the defendant was a person with violent propensities. The defendant, however, failed to preserve this claim by requesting a limiting instruction at trial. Because "[w]e have previously held that the failure of the trial court to give a limiting instruction concerning the use of evidence of prior misconduct is not a matter of constitutional magnitude"; (internal quotation marks omitted) *State* v. *Ortiz*, 40 Conn. App. 374, 381, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996); we will not review the defendant's claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.

[9] Even if we were to conclude that the court abused its discretion and improperly admitted the testimony of Gino Monterio concerning the defendant's prior possession of the handgun, we would conclude, nevertheless, that it was harmless error. "[W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier

## II

The defendant next claims that the court should have admitted, as third party culpability evidence, Roche's prior written and signed police statement, in which she indicated that Hill had told her in a telephone conversation that Gino Monterio, and not "Gino's boy," shot Haskill. Specifically, the defendant claims that in refusing to admit Roche's statement, the court deprived him of his constitutional right to present a defense under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut. We conclude that it was not an abuse of discretion for the court to determine that the evidence could not be used to prove third party culpability, and, in any event, even if improper, the refusal of the court to admit the evidence to establish third party culpability was harmless, as it did not substantially affect the verdict.

### A

Although the defendant frames the issue on appeal as a constitutional violation, our ultimate determination rests on evidentiary grounds; see *State* v. *Galarza*, 97 Conn. App. 444, 463–64, 906 A.2d 685, cert. denied, 280 Conn. 936, 909 A.2d 962 (2006); *State* v. *Eagles*, 74 Conn. App. 332, 335, 812 A.2d 124 (2002), cert. denied, 262 Conn. 953, 818 A.2d 781 (2003); and, therefore, we review the court's ruling on this evidentiary matter for abuse of discretion.[10]

---

of fact and the result of the trial." (Internal quotation marks omitted.) *State* v. *Sawyer*, 279 Conn. 331, 358, 904 A.2d 101 (2006). In the present case, the state produced three witnesses, including the victim himself, to testify that the defendant was the shooter. In light of the strength of the state's case against the defendant, including Hill's testimony about the defendant's possession of the handgun on previous occasions, to which the defendant failed to object at trial, and the testimony from three witnesses identifying the defendant as the shooter, the admission of Gino Monterio's testimony regarding the defendant's prior possession of the gun was harmless.

[10] See footnote 6; see also *State* v. *Ortiz*, 252 Conn. 533, 564, 747 A.2d 487 (2000).

It is well established that "a defendant may introduce evidence which indicates that a third party, and not the defendant, committed the crime with which the defendant is charged. . . . The defendant, however, must show some evidence which directly connects a third party to the crime with which the defendant is charged." (Internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 354, 796 A.2d 1118 (2002). "Unless that direct connection exists it is within the sound discretion of the trial court to refuse to admit such evidence when it simply affords a possible ground of possible suspicion against another person." (Internal quotation marks omitted.) *State* v. *Galarza*, supra, 97 Conn. App. 464.

A defendant's constitutional right to present a defense "does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense." (Citations omitted.) *State* v. *Cereta*, 260 Conn. 251, 261, 796 A.2d 1176 (2002). "Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes." (Internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 624–25, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).

Our Supreme Court has stated that the first criterion governing the admissibility of third party culpability evidence relates to the rules of relevance. *State* v. *Alvarez*, 216 Conn. 301, 304, 579 A.2d 515 (1990). Relevant evidence is "evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1.

"The determination that the proffered testimony is relevant, [however], does not end the inquiry. . . . [T]he court must also determine whether the statement falls within any recognized exception to the hearsay rule." *State* v. *Alvarez*, supra, 216 Conn. 305; see also *State* v. *Lewis*, 245 Conn. 779, 799, 717 A.2d 1140 (1998) (rejecting defendant's claim that any exculpatory hearsay evidence is constitutionally required to be admitted, regardless of its admissibility under evidentiary rules); *State* v. *Baker*, 50 Conn. App. 268, 279–80, 718 A.2d 450 (holding that defendant was precluded from offering evidence, based on hearsay, to establish third party culpability because without hearsay evidence, no direct connection could be established), cert. denied, 247 Conn. 937, 722 A.2d 1216 (1998). "An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." (Internal quotation marks omitted.) *State* v. *Wargo*, 255 Conn. 113, 127, 763 A.2d 1 (2000); see also Conn. Code Evid. §§ 8-1 (3), 8-2. Pursuant to § 8-7 of the Connecticut Code of Evidence, "[h]earsay within hearsay is admissible only if each part of the combined statements is independently admissible under a hearsay exception." "When a statement is offered that contains hearsay within hearsay, each level of hearsay must itself be supported by an exception to the hearsay rule in order for that level of hearsay to be admissible." *State* v. *Lewis*, supra, 802.

At trial, the defendant sought to use Roche's out-of-court statement, which contained Hill's statement that Gino Monterio had shot Haskill, substantively to prove third party culpability. The court, however, admitted Roche's prior inconsistent statement only for the limited purpose of impeaching the testimony of Roche and Hill. On appeal, the defendant claims that the court improperly refused to admit Roche's police statement,

consisting, in part, of a statement made by Hill, as evidence of third party culpability. Guided by the principle that a defendant's right to present a defense "does not require the trial court to forgo completely restraints on the admissibility of evidence"; *State* v. *Cerreta*, supra, 260 Conn. 261; we conclude that the court did not abuse its discretion in admitting Roche's prior inconsistent statement only for the limited purpose of impeaching the credibility of Hill and Roche.

Because it is dispositive, we turn first to *Alvarez'* second prong requiring that the evidence fit within some recognized hearsay exception. See *State* v. *Alvarez*, supra, 216 Conn. 305. Roche's written police statement and its contents, which the defendant sought to admit as third party culpability evidence, contained two levels of hearsay. The first layer, consisting of Roche's written and signed police statement, is hearsay because the content of the police statement, which the defendant offered into evidence for the truth of the matter asserted, was made out of court, and Roche was not a party to the case. In addition to this first level of hearsay, the document also contained Roche's iteration of Hill's statement, indicating that Gino Monterio had shot Haskill, which constitutes a second layer of hearsay. We will examine each in turn.

In *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 586 (1986), our Supreme Court carved out a hearsay exception for a prior inconsistent written statement, allowing the statement to be admitted for substantive purposes, rather than only for impeachment purposes, if the following conditions have been satisfied: "(1) the statement is signed by the declarant; (2) the declarant has personal knowledge of the facts stated; and (3) the declarant testifies at trial and is available for cross-examination." (Internal quotation marks omitted.) *State* v. *Corbin*, 260 Conn. 730, 737, 799 A.2d 1056 (2002);

see also Conn. Code Evid. § 8-5, commentary (noting that Connecticut Code of Evidence § 8-5 [1] codified *Whelan* rule and incorporated all of its subsequent developments and clarifications). A statement meeting the *Whelan* requirements will be admissible, unless the trial court, acting as a gatekeeper, determines that the "circumstances under which the statement was made nonetheless render it so unreliable that a jury should not be permitted to consider it for substantive purposes." *State* v. *Mukhtaar*, 253 Conn. 280, 307 n.27, 750 A.2d 1059 (2000).

The admissibility of a prior inconsistent statement pursuant to *Whelan* is a matter within the wide discretion of the trial court. *State* v. *Newsome*, 238 Conn. 588, 596, 682 A.2d 972 (1996). We conclude that the defendant has not demonstrated that the court abused its discretion in declining to admit Roche's prior inconsistent statement for substantive purposes under *Whelan*. Even in his reply brief, the defendant failed to analyze the essential *Whelan* elements and to relate them to the facts of his case. Although Roche's prior inconsistent statement was in writing and signed by Roche, and Roche testified at trial and was available for cross-examination, the defendant has not provided any analysis as to whether Roche had personal knowledge of the facts stated.

Our Supreme Court has concluded that although " 'the personal knowledge' prong of the *Whelan* rule does not require that the declarant have witnessed the commission of the crime that is the subject of the prior inconsistent written or recorded statement"; *State* v. *Grant*, 221 Conn. 93, 99, 602 A.2d 581 (1992); our case law makes clear that a declarant will be said to possess personal knowledge in such a situation "[i]f the substance of the prior inconsistent statement of a witness is an admission made by the defendant to the witness." *State* v. *Woodson*, 227 Conn. 1, 22, 629 A.2d 386 (1993);

see also *State* v. *Pierre*, 277 Conn. 42, 58–59, 890 A.2d 474, cert. denied, 547 U.S. 1197 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006). In the present case, even if Roche's statement satisfied the other requirements for admissibility under *Whelan,* the words spoken to Roche were by Hill and not by the defendant as in *State* v. *Woodson,* supra, 22. The defendant has provided us with no analysis as to how Roche's police statement would satisfy the personal knowledge prong, and we decline to make such argument on his behalf.

In his reply brief, the defendant also argues that the statement Hill made to Roche during their telephone conversation qualifies as a spontaneous utterance, and, therefore, the court improperly concluded that Hill's statement was not admissible substantively as an exception to the hearsay rule. Under the spontaneous utterance exception, "[h]earsay statements, otherwise inadmissible, may be admitted into evidence to prove the truth of the matter asserted therein when (1) the declaration follows a startling occurrence, (2) the declaration refers to that occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant." *State* v. *Kelly,* 256 Conn. 23, 41–42, 770 A.2d 908 (2001); see also Conn. Code Evid. § 8-3 (2) ("[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition").

"The requirement that a spontaneous utterance be made under such circumstances to [negate] the opportunity for deliberation and fabrication by the declarant . . . does not preclude the admission of statements made after a startling occurrence as long as the statement is made under the stress of that occurrence. . . .

While [a] short time between the incident and the statement is important, it is not dispositive." (Citation omitted; internal quotation marks omitted.) *State* v. *Kelly*, supra, 256 Conn. 42. The trial court has broad discretion in determining whether an utterance is spontaneous, and this determination "will not be disturbed on appeal absent an unreasonable exercise of discretion." (Internal quotation marks omitted.) *State* v. *Shabazz*, 246 Conn. 746, 766, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999).

A key element of the spontaneous utterance exception is that the statement was spontaneous, as evidenced by a showing that the declarant made the statement before he had time for deliberation, reflection or fabrication. In the present case, the record provides no indication of when Hill telephoned Roche, except that the telephone call occurred on the same day as the shooting. Although we are cognizant that "there is no identifiable discrete time interval within which an utterance becomes spontaneous"; *State* v. *Kirby*, 280 Conn. 361, 375, 908 A.2d 506 (2006); under the circumstances of this case, there is no evidence in the record from which we could conclude that Hill "made the statement before he . . . had the opportunity to undertake a reasoned reflection of the event described therein." See *State* v. *Westberry*, 68 Conn. App. 622, 628, 792 A.2d 154, cert. denied, 260 Conn. 923, 797 A.2d 519 (2002). In his reply brief, the defendant urges us to determine that the court could have concluded that "the statement was made close in time to the incident, since Roche said that Hill was 'crying like a girl' and very upset." Although the statement was made on the same night as the shooting, evidence was not submitted about how much time had passed between the statement and the shooting. Furthermore, knowledge of human nature teaches us that grieving people may cry about upsetting events long after they are over. Without

more evidence as to the passage of time between the incident and the utterance and how the statement came to be made, we cannot conclude that the court abused its discretion in refusing to admit this statement into evidence as a spontaneous utterance.

Accordingly, we conclude that the defendant has failed to prove that the court abused its discretion in declining to admit Roche's written statement, which contained a remark made by Hill. There is nothing in the record to support the admissibility of each of the two levels of hearsay, which would have been necessary to admit Roche's statement into evidence for substantive purposes.

B

As a final matter, although not required, we do resolve the defendant's contention that the court's refusal to admit Roche's written statement for the substantive purpose of establishing third party culpability constituted harmful error warranting a new trial. Even if we were to conclude, which we do not, that the court improperly refused to admit Roche's prior inconsistent statement and its contents substantively, we nonetheless would conclude that under the circumstances of this case, any error was harmless.

The defendant claims that the exclusion of Roche's prior inconsistent statement to prove third party culpability amounted to a constitutional violation requiring the state to prove that the error was harmless beyond a reasonable doubt. The defendant, however, provides no citation to legal authority to support this proposition. In part II A, we noted that the impropriety alleged by the defendant is not constitutional in nature, but rather is evidentiary. The defendant, therefore, bears the burden, on appeal, of establishing harmful error. See *State v. Sawyer*, 279 Conn. 331, 352, 904 A.2d 101 (2006). Our Supreme Court recently concluded in *Sawyer* that "the

proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error." Id., 357. This standard "expressly requires the reviewing court to consider the effect of the erroneous ruling on the jury's decision." Id.; see also *State* v. *Smith*, 280 Conn. 285, 307, 907 A.2d 73 (2006).

In applying the standard articulated in *State* v. *Sawyer*, supra, 279 Conn. 357, we do not have a "fair assurance" that the alleged error substantially affected the verdict, and, therefore, we conclude that the defendant has not satisfied his burden of demonstrating the existence of harmful error. Several factors guide our determination that the defendant failed to satisfy his burden of showing that the alleged error was harmful.

With respect to the court's refusal to admit Roche's prior inconsistent written statement for substantive purposes pursuant to the hearsay exception enunciated in *State* v. *Whelan*, supra, 200 Conn. 753, we find our Supreme Court's analysis in *State* v. *Tatum*, 219 Conn. 721, 595 A.2d 322 (1991), instructive. In *Tatum*, a witness testified at trial that the defendant was responsible for killing the victim, and the defendant sought to admit the witness' prior inconsistent statement for its substantive truth that a person other than the defendant had shot the victim. Id., 737. The trial court, however, limited the use of the witness' prior inconsistent statement to evaluating his credibility. Id. After acknowledging that the failure to give the requested *Whelan* instruction constituted error, our Supreme Court noted that if the court had permitted the substantive use of the witness' prior identification of another person as the perpetrator, the jury could have concluded that someone other than the defendant had killed the victim. Id., 737–39. On the other hand, our Supreme Court also explained that when the court limited the use of the prior inconsistent statement to impeachment purposes only, the jury

could have concluded that the witness may have been "mistaken when he identified the defendant as the perpetrator since he had previously identified someone else." Id., 739.

Our Supreme Court then concluded that the defendant had not demonstrated harmful error affecting the verdict because "in both instances the jury would have been authorized to use the prior inconsistent statement to find that the defendant had not committed [the crime], either because [the witness] was lying at trial when he asserted that the defendant was the guilty party or because [the witness] was telling the truth when he had previously stated that [a person other than the defendant] was the guilty party." Id.; see also *State* v. *Wooten*, 227 Conn. 677, 699–702, 631 A.2d 271 (1993).

As in *State* v. *Tatum*, supra, 219 Conn. 739, the jury in the present case could have found the defendant not guilty, based on reasonable doubt, on the basis of Roche's prior inconsistent written statement, describing Gino Monterio as the shooter, even though the statement was admitted only for impeachment purposes.

Moreover, the strength of the state's case against the defendant militates against a conclusion by this court that the trial court's refusal to admit Roche's police statement, containing Hill's comment, had the effect of substantially swaying the jury's verdict. The present case did not rest only on Roche's testimony that Hill identified the defendant as the shooter. Rather, properly admitted evidence was elicited from the testimony of three of the state's witnesses, all of whom unequivocally identified the defendant as the shooter. Haskill, the victim of the shooting, was one of the three eyewitnesses, and he testified that the defendant approached the Dodge Neon in which he was sitting and shot him in the face with a handgun. Testimony placing the defendant near the driver's side of Haskill's Dodge Neon and

the other witnesses near the passenger side, coupled with the other evidence, supports the identification of the defendant as the shooter.

In light of the minimal effect of the challenged ruling, and the compelling, properly admitted evidence indicating that the defendant was the shooter, we conclude that the failure to admit the evidence, even if improper, was harmless and that it did not have a substantial effect on the jury's decision.

The judgment is affirmed.

In this opinion the other judges concurred.