******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* HANIF SOLOMON
(AC 34843)

Lavine, Bear and Keller, Js.*

*Argued January 14—officially released May 27, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Dewey, J.)

*Auden Grogins*, assigned counsel, for the appellant
(defendant).

*Timothy F. Costello*, assistant state's attorney, with
whom, on the brief, were *Gail P. Hardy*, state's attor-
ney, and *David L. Zagaja*, senior assistant state's attor-
ney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Hanif Solomon, appeals from the judgment of conviction, rendered after a trial to the court,[1] on the charge of criminal possession of a firearm in violation of General Statutes § 53a-217c. On appeal, the defendant claims that (1) the court improperly admitted uncharged misconduct evidence and (2) the court was collaterally estopped from finding him guilty of criminal possession of a firearm. We disagree and affirm the judgment of the court.

The trial court found the following facts relevant to this appeal. On evening of August 28, 2010, Robert Johnson was riding his bicycle on a street in Hartford when he noticed a person emerge from the shadows. From a distance of forty feet, Johnson observed the glint of a silver revolver before the person opened fire in his direction.

Johnson pedaled hurriedly in an attempt to evade the shooter, and although successful in dodging his assailant's bullets, he fell from his bicycle to the pavement. As the shooter drew closer, Johnson recognized him to be the defendant. Johnson observed that the defendant carried "a chrome, or nickel plated" .38 caliber revolver.[2] The defendant stood over Johnson, who pleaded for his life. No additional bullets were fired. The defendant told Johnson to "get the fuck out of here," and warned him not to report the incident to the police.

The defendant was charged in a four count information with attempt to commit murder in violation of General Statutes §§ 53a-54a and 53a-49 (a) (2), attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (5) and 53a-49 (a) (2), carrying a revolver without a permit in violation of General Statutes § 29-35, and criminal possession of a firearm in violation of § 53a-217c. The defendant pleaded not guilty to all four counts and elected a jury trial. Shortly before trial, however, the defendant waived his right to a jury trial on the criminal possession of a firearm count, and elected to have that count decided by the trial court.

At trial, the jury and the trial court heard all of the evidence and arguments concurrently, with the exception of the defendant's prior felonies, which were relevant only to the criminal possession of a firearm count and thus were heard solely by the trial court outside the presence of the jury. On March 7, 2012, the jury found the defendant not guilty of the charges before it, but the court found the defendant guilty of criminal possession of a firearm.[3] The court sentenced the defendant to a term of five years incarceration, execution suspended after three years, followed by five years probation.

On appeal, the defendant claims the trial court (1)

improperly admitted uncharged misconduct evidence[4] and (2) was collaterally estopped from finding him guilty of criminal possession of a firearm because the jury found him not guilty of carrying a revolver without a permit.

## I

The defendant first claims that the court abused its discretion by admitting into evidence (1) a revolver recovered two months after the shooting, (2) testimony that this revolver was recovered during an unrelated domestic disturbance, and (3) evidence that the defendant pleaded guilty to possessing this revolver following the domestic disturbance.[5] The defendant contends that the evidence was not relevant, and that if relevant, its prejudicial effect outweighed its probative value. We disagree.

"[O]ur standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Hart*, 118 Conn. App. 763, 786, 986 A.2d 1058, cert. denied, 295 Conn. 908, 989 A.2d 604 (2010).

Although evidence of a defendant's wrongs and bad acts is inadmissible to prove bad character or criminal propensity, "[e]vidence of other crimes, wrongs or acts of a person *is admissible* for purposes . . . such as to prove intent, identity, malice [and] motive . . . ." (Emphasis added.) Conn. Code Evid. § 4-5 (b). To be admissible, evidence of prior misconduct must be relevant and the probative value of the evidence must outweigh its prejudicial impact. See *State* v. *Cutler*, 293 Conn. 303, 311–12, 977 A.2d 209 (2009).

"Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the [fact finder]. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Johnson*,

289 Conn. 437, 463, 958 A.2d 713 (2008).

A

The defendant first claims that the court abused its discretion by admitting a revolver into evidence in the absence of proof linking the firearm to the charged offense. The defendant argues that the revolver was not relevant to the criminal possession of a firearm charge and that admitting it into evidence was unduly prejudicial. The state argues that the revolver is both relevant and highly probative as to the defendant's identity and access to the means to commit the charged offense.

The following additional facts are necessary to the resolution of this issue. Approximately two months after the shooting, on November 23, 2010, the Hartford police responded to a domestic disturbance at 575 Farmington Avenue, an apartment building where Towanna Williams lived. Williams called 911 following a verbal quarrel with the defendant; she reported to the police that she was scared because the defendant had a gun. On direct examination, Williams testified that on November 23, 2010, she allowed the police into her apartment and consented to a search that led to the discovery of a revolver the defendant kept at her residence. The revolver was marked as an exhibit for identification over the defendant's objection.[6] Williams testified that she recognized the gun and previously had seen the defendant carrying it. Williams also provided a written statement to the police in which she stated that the defendant has a silver gun "that he takes everywhere he goes." The revolver later was introduced as a full exhibit following the testimony of the police officers who recovered it from Williams' apartment.

On the basis of our review of the record, we conclude that the court did not abuse its discretion when it admitted the revolver into evidence in connection with the criminal possession of a firearm charge tried to the court. The defendant argues that because the revolver was never connected to the crime, it was not relevant. We disagree. In this case, the revolver was relevant to show that the defendant possessed the means to commit the crime of criminal possession of a firearm. See *State* v. *Pena*, 301 Conn. 669, 675, 22 A. 2d 611 (2011). When offered for the purpose of showing a defendant's means or opportunity to commit a charged offense, the state need not "connect a weapon directly to the defendant and the crime. It is necessary only that the weapon be suitable for the commission of the offense." *State* v. *Sivri*, 46 Conn. App. 578, 584, 700 A.2d 96, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997).[7] Here, the weapon was not only suitable for the commission of the charged offenses, but it also matched the description given by Johnson to the police of a silver, revolver style handgun.

Moreover, the probative value of the revolver was not outweighed by its prejudicial impact. The revolver was highly probative as evidence of the defendant's ability to access firearms, especially the type that was used in the shooting. The defendant claims that admitting the revolver into evidence was unduly prejudicial because it was never linked to the earlier shooting. The admission of the revolver cannot be considered unduly prejudicial, however, when offered for this limited purpose because mere possession of the means to commit a crime, without more, does not establish that the defendant had bad character or a propensity for violence. See *State* v. *Pena*, supra, 301 Conn. 676. On this basis, we cannot conclude that placing the revolver into evidence in connection with the criminal possession of a firearm charge being tried to the court was an abuse of the court's discretion.

B

The defendant next claims that testimony concerning the circumstances under which the revolver was recovered should not have been admitted because evidence of the domestic violence incident was not relevant and was unduly prejudicial. The state argues that the testimony was properly admitted to combat the false impression left by the defendant's cross-examination of Williams, specifically that she may have lied to the police and had the defendant arrested on a false gun charge to prevent him from returning to his estranged wife.

The following additional facts are relevant to this claim. Following Williams' testimony linking the revolver to the defendant, the defendant attacked her credibility on cross-examination. The defendant elicited information about the personal relationship[8] between the defendant and Williams, specifically that she someday hoped to be "Mrs. Towanna Solomon" and that this wish was complicated by the fact that the defendant was already married. She also testified that she hoped that the defendant would "forgive her" for turning over the revolver and telling the police that the firearm belonged to the defendant.

After Williams testified, the state proffered the testimony of Hartford police Officer Steven Chesworth, concerning the circumstances surrounding the recovery of the revolver. Chesworth was one of the police officers who responded to a domestic violence complaint made by Williams on November 23, 2010. The state argued that the officer's testimony had become necessary because Williams' credibility had been attacked. The state also argued that Williams' testimony—specifically, that she asked for the defendant's forgiveness—may have created the false impression that Williams sought forgiveness for lying to the police that the revolver belonged to the defendant. The court agreed that the defendant

had opened the door[9] and, after finding that the evidence was relevant and more probative than prejudicial, allowed limited testimony concerning the circumstances under which the revolver was recovered.

Chesworth testified that when he responded to the call, he encountered Williams in a friend's apartment. Williams was scared because the defendant was angry and had a gun.[10] Chesworth testified that when the police entered Williams' apartment, they encountered the defendant in a back hallway and informed the defendant that they were present to investigate "a complaint of a domestic." Chesworth testified that Williams consented to a search of the apartment for a firearm and that the weapon was found in a dresser. The firearm was then admitted as a full exhibit.

On cross-examination, the defendant explored the nature of the domestic violence incident and was permitted to read into evidence Williams' written statement to the police.[11] The defendant elicited testimony that he had not physically touched her and that the altercation was limited to an exchange of words.

On the basis of our review of the record, we conclude that the evidence concerning the circumstances surrounding the seizure of the revolver was appropriately admitted to rehabilitate Williams' credibility and to correct a false impression that may have been created by the defendant's cross-examination of Williams, specifically that she may have lied to the police and had the defendant arrested on a false gun charge to prevent him from returning to his estranged wife.

Within the discretion of the court, the state may "explain and clarify relevant matters [of a witness'] testimony which [may] have been weakened or obscured by his cross-examination." *State* v. *Graham*, 186 Conn. 437, 448, 441 A.2d 857 (1982). "Under our adversary system of trials the opponent must be given an opportunity to meet this attack [on credibility] by evidence sustaining or rehabilitating the witness." (Internal quotation marks omitted.) *State* v. *Daley*, 11 Conn. App. 185, 187, 526 A.2d 14 (1987).

Here, the defendant elicited testimony regarding Williams' wish for the defendant's forgiveness and the details of her complicated personal relationship with the defendant, which placed her motives and credibility at issue. Accordingly, testimony that the revolver was recovered during a domestic disturbance became probative of Williams' credibility and necessary to dispel the notion that her statements to the police were a fabrication. We cannot say that the state's brief inquiry into the details of the domestic violence call was unduly prejudicial as it was limited to a few questions regarding why the police were called and the overall character of the incident. We conclude that the trial court did not abuse its discretion when it admitted this testimony in

connection with the criminal possession of a firearm charge that was being tried to it.

C

The defendant also claims that the court abused its discretion when it admitted evidence that the defendant pleaded guilty—pursuant to the *Alford* doctrine[12]—to criminal possession of the revolver found in Williams' apartment. He contends that this evidence was not relevant to the criminal possession of a firearm charge stemming from the shooting incident and that the evidence was unduly prejudicial. The state argues that the evidence was properly admitted because the defendant opened the door. On the basis of our review of the record, we conclude that admission of the defendant's guilty plea was harmless error.

The following additional facts are relevant to this claim. The defendant cross-examined Chesworth and challenged the state's evidence that the defendant possessed the revolver found at Williams' apartment. The defendant presented evidence that he lived at Williams' apartment only part-time, that the revolver was not found in his bags, and that it was found in a dresser belonging to Williams. He also established that it was police practice that, when firearms are seized, they are sent to a state laboratory for analysis, including fingerprinting. Chesworth testified that he was aware of this general police practice, but did not know if the revolver in this case underwent forensic testing.

Following the cross-examination of Chesworth, the state proffered the testimony of another Hartford police officer that the defendant had pleaded guilty to criminally possessing the revolver found at Williams' apartment. The state contended that such testimony was now relevant to establish that it was the defendant's revolver and to explain why it was not sent for forensic testing. The defendant objected, noting that his plea was made pursuant to the *Alford* doctrine and that evidence of the guilty plea was prejudicial. The court ruled that evidence of the defendant's conviction for criminally possessing a revolver would not be admitted, but cautioned that his ruling was "subject to what the cross-examination is. . . . If something comes up in cross that requires clarification then [I'll] allow it. . . . If [defense counsel] cross-examines at any length that the gun was not tested, then I will allow it."

The state then called Hartford police Officer John O'Hare. O'Hare testified that he interviewed the defendant regarding his possession of the firearm found at Williams' apartment. On cross-examination, the defendant elicited testimony from O'Hare that the defendant never admitted owning the revolver during his interview.

Following this cross-examination, the state again sought to introduce evidence that the defendant

pleaded guilty to possessing the revolver and argued that the defendant had opened the door by asking whether the defendant ever *admitted* to owning the revolver. The court allowed the introduction of the defendant's plea. O'Hare then testified on redirect examination that he was aware that the police recovered the revolver from Williams' apartment and that the defendant subsequently had pleaded guilty to possessing the revolver found at the apartment.

We observe that the defendant's guilty plea was made pursuant to *Alford* and that such a "plea does not require an admission of guilt but rests on a defendant's concession that the state had enough evidence to convict him of the crime with which he was charged." *State* v. *Mordasky*, 84 Conn. App. 436, 448, 853 A.2d 626 (2004). "Even though [an *Alford* plea] may be regarded as a tacit admission, its inconclusive and ambiguous nature dictates that it should be given no currency beyond the particular case in which it was entered." *Lawrence* v. *Kozlowski*, 171 Conn. 705, 712 n.3, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977).

Accordingly, even if the defendant opened the door, it was improper for the court to have allowed evidence of the defendant's *Alford* plea for the purposes of proving that the defendant admitted to possessing the revolver found in Williams' apartment. See *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 49, 757 A.2d 501 (2000) (*Alford* and nolo contendere pleas "may not be used against the defendant as an admission in a subsequent criminal or civil case"). We conclude, however, that this error was harmless.

With respect to all of the defendant's evidentiary claims, the defendant has failed to show that any impropriety impacted the court's finding of guilt on the charge of criminal possession of a firearm. We note that the defendant has failed to cite any evidence that would lead us to conclude that the court improperly relied upon inadmissible evidence. In its written decision, the court stated that it found credible Johnson's testimony that the defendant possessed a revolver during the shooting incident. This testimony, along with the defendant's criminal history, was all that was needed to support a conviction of criminal possession of a firearm. There is no indication from our review of the record that the court's decision was affected by any improperly admitted evidence.[13] The defendant's claim therefore must fail.

II

Finally, the defendant claims that the court was collaterally estopped from finding him guilty of criminal possession of a firearm after the jury found him not guilty of the other charges related to the shooting, including carrying a revolver without a permit. The

defendant acknowledges that this claim was rejected by our Supreme Court in *State* v. *Knight*, 266 Conn. 658, 664–666, 835 A.2d 47 (2003) (doctrine of collateral estoppel does not apply to several charges allocated between two triers of fact for concurrent adjudication upon same evidence), which we are bound to follow.[14] Accordingly, the defendant's claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In a trial to a jury, the defendant was found not guilty of attempt to commit murder in violation of General Statutes §§ 53a-54a and 53a-49 (a) (2), attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (5) and 53a-49 (a) (2), and carrying a revolver without a permit in violation of General Statutes § 29-35.

[2] In a subsequent police investigation, no shell casings were found at the scene of the shooting.

[3] While the jury was deliberating on the counts tried to it, the court heard the testimony of Carl Ajello, a senior assistant state's attorney, who established that the defendant had previous felony convictions. The jury then returned with a verdict of not guilty on the charges tried to it. The court excused the jury and found the defendant guilty of criminal possession of a firearm.

[4] We observe that when the trial court ruled on the admissibility of evidence at trial, its rulings applied to all counts including those being tried to the jury. On appeal, however, because the jury found the defendant not guilty on the counts before it, our review is limited to whether the court improperly admitted evidence in connection with the criminal possession of a firearm charge.

[5] The defendant was convicted of criminal possession of a firearm on two occasions, once stemming from the shooting at issue in this appeal, and once following an unrelated domestic disturbance discussed throughout this opinion.

[6] Prior to the commencement of evidence, the court ruled that evidence of the defendant's possession of a revolver at Williams' apartment would be admitted and agreed to provide a limiting instruction. The court determined that the evidence was more probative than prejudicial. At that time, the state did not seek to introduce evidence that the revolver was recovered during a domestic violence investigation.

[7] We reject the defendant's argument that the revolver was not sufficiently linked to the shooting because the state never argued that the revolver recovered in Williams' apartment was the actual weapon used in the shooting. This is of consequence because "[i]f the weapons . . . are offered to show that the defendant *used* them to commit the crime charged and not solely for the purpose of [establishing access to the means], it must first appear that the crime charged . . . *was committed with such tools or weapons* . . . ." (Emphasis added.) 1A J. Wigmore, Evidence (6th Ed.1976) § 153, p. 1763–1764.

[8] We note that the state repeatedly objected to the defense inquiry into Williams' personal relationship with the defendant.

[9] The court stated: "Well counsel, while you were asking the questions, the state objected several times to any questions about the relationship between the defendant and the witness. . . . The inferences that she wanted to marry him but couldn't because of whatever circumstances. The second inference that you elicited was that she needed to be forgiven, but we really don't know why. You opened the door to this; I'm going to allow the testimony in. . . . That's it. And you cannot direct what the state can and can't do, you can't cross-examine, bringing in inferences and then expect that the state is not going to act upon that. That was one of the things I cautioned about."

[10] Chesworth testified as follows:

"[The Prosecutor]: Did you end up in her apartment?

"[Chesworth]: Yes, she told us that she was having a fight, and her boyfriend was upstairs, and she was scared of him because he wanted money, and she told him to get out because he had a gun, and she was very scared because he had a gun, and he mushes her face whenever he gets mad, and she's afraid he'd use the gun on her."

[11] Williams stated: "I asked [the defendant] to stop walking loudly because the neighbor downstairs complains. We argue about money. He got up in my face and yelled, I ain't leaving until you give me my money. I went downstairs to apartment 202 and called the police. I told the police that [the defendant] has a gun and that he takes everywhere he goes. It's a silver gun that he keeps in his bag or pockets. I told the police the door was unlocked, and they could go in and find it. I was terrified and scared because in the past he has mushed me and knocked me down, and I know he has that gun."

[12] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 460, 27 L. Ed 2d 162 (1970).

[13] The court also stated that, "Williams, the defendant's girlfriend, testified that the defendant carried a revolver at all times. During a domestic violence episode after this incident, she had the responding officers remove the defendant's revolver from their shared apartment." Although the court made reference to the domestic violence incident, this reference was proper.

[14] The defendant raised this claim for the purpose of possible further appellate review.