******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ZACKERY C. FRANKLIN
(AC 37161)

Gruendel, Lavine and Bishop, Js.

*Argued September 25—officially released December 29, 2015*

(Appeal from Superior Court, judicial district of New Haven, B. Fischer, J.)

*G. Douglas Nash*, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Kevin C. Doyle*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Zackery C. Franklin, appeals from the judgment of conviction, rendered after a jury trial, of one count of murder in violation of General Statutes § 53a-54a (a), one count of felony murder in violation of General Statutes § 53a-54c, and one count of robbery or attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (1). The defendant also appeals from the judgment of conviction rendered after a trial to the court of one count of carrying a pistol without a permit in violation of General Statutes § 29-35, and one count of criminal possession of a pistol or revolver in violation of General Statutes (Rev. to 2011) § 53a-217c (a) (1). On appeal, the defendant claims that (1) the evidence was insufficient to support the judgment of conviction on all counts because the state relied on a single eyewitness whose testimony was contradicted by the physical evidence; (2) the verdicts were against the weight of the physical evidence, entitling him to a new trial; (3) the court erred in admitting prior misconduct evidence to show that he possessed the means to commit the crimes; (4) the prosecutor engaged in impropriety during closing argument; (5) the court erred in merging the convictions for murder and felony murder; and (6) the judgment file must be corrected because the conviction for "robbery or attempted robbery" encompassed a unanimous finding on the lesser offense of attempt but not the greater completed offense of robbery. We reverse the judgment of the court as to the felony murder conviction. We affirm the judgment in all other respects.

The defendant's convictions arise from the murder of John Claude James (victim). On July 9, 2011, the victim was in the area of Howard Avenue and Putnam Street in New Haven. At approximately 6 p.m., firefighters responded to a call that someone had been shot; they found the victim on the sidewalk adjacent to the entrance to the parking lot behind 518–526 Howard Avenue. The victim had been shot three times and he died shortly after being taken to the hospital.

The jury reasonably could have found the following facts. The defendant had a motive to kill the victim so that he could obtain the victim's gold chain, holding a joker medallion.[1] The victim was wearing this chain on July 9, 2011. Two witnesses, Carol Boxley and Charles Caple, stated individually to police that on or about July 9, 2011, they overheard the defendant discussing gold jewelry, including the victim's joker chain. Boxley told police that the defendant said "we're going to get the joker chain 'cause gold is high now." Caple told police that on the day the victim was shot, the defendant may have said that he was "gonna get" the victim.

Boxley and her family lived at 536 Howard Avenue.

Her daughter, Renicka (Nicky) Boxley, had a relationship with the defendant and was pregnant with his child. Boxley's son, Antonio Lofton, Jr., witnessed the victim's shooting.

At approximately 5:30 p.m. on July 9, 2011, Dorothy Council was on the back porch of 530 Howard Avenue when the victim stopped by to greet her. The victim left soon after and approximately fifteen minutes later, Council heard gunshots and ran inside 530 Howard Avenue. Looking through a window, Council saw the victim run across the parking lot toward Putnam Street, lose his balance, spin around, and fall down at the entrance of the parking lot to 518–526 Howard Avenue.

At this time, Lofton was in his backyard at 536 Howard Avenue, from where he could see across Putnam Street and into the parking lot of 518–526 Howard Avenue. Lofton saw the defendant shoot the victim in the chest. The defendant fired "three or more" or "maybe four or five shots" while the victim was facing him. Lofton saw the defendant, with a "silvery handgun" in his hand, and his friend, Earl Simpson, run from the back of Putnam Street toward the front of his house. He did not see anything in Simpson's hands. Lofton was able to identify the defendant because he had known him for about a year. He had known the victim for longer, and was able to identify him as well.

Lofton went into his house using a rear entrance and saw the defendant in his kitchen. Both Simpson and the defendant offered Lofton marijuana and money, which Lofton did not accept. The defendant and Simpson ran out of the apartment toward Carlisle Street and got into a waiting black car.

At this time, Caple was in the area and heard the gunshots. He saw a black Acura, which he thought belonged to Isis Hargrove, drive by on Carlisle Street. Hargrove was Simpson's sister and Caple was familiar with her. He knew that she had been involved with the defendant, and had seen her previously driving a black Acura in the area. Police later confirmed that she had a black Acura registered in her name. The police gathered evidence from the area, including several of the victim's belongings, in the front part of the alcove between 518 and 522 Howard Avenue. The police found the victim's unbroken joker chain on the ground. Although the victim had a cell phone with him that afternoon, the police recovered only the leather cell phone case that the victim was known to wear on his belt. The police found six nine millimeter shell casings in the alcove, as well as blood-like substances near the alcove and on the sidewalk near the entrance to the parking lot where the victim was found.

On July 11, 2011, the police spoke with Hargrove about the shooting. On the night of July 12, 2011, the defendant and Hargrove, along with Simpson and his

girlfriend Mikia Gary, rented a car and drove to North Carolina. On the way, the car was stopped for speeding in New Jersey. The state trooper asked for the occupants' identifications, and the defendant gave his brother's name. In the following weeks, the defendant was not seen in the area of Howard Avenue and Putnam Street, although he regularly spent time there prior to the shooting.

On November 16, 2011, the defendant was arrested in Virginia. When the deputy making the arrest asked the defendant for identification, he gave a YMCA card with his photograph on it but with a name other than his own. At trial, the state asserted that the defendant's use of false names and his flight from the state were indicative of his consciousness of guilt.

The defendant was brought back to Connecticut and charged with five offenses. The charges of murder, felony murder, and robbery or attempt to commit robbery in the first degree were tried to a jury, which returned a verdict of guilty on all three charges. The charges of carrying a pistol without a permit and criminal possession of a pistol or revolver were tried to the court, which found him guilty. The court merged the murder and felony murder convictions and imposed a sentence of sixty years imprisonment on the murder charge and twenty years on the robbery or attempted robbery charge to be served concurrently. The court imposed a sentence of five years on the conviction of carrying a pistol without a permit to be served concurrently, and five years on the conviction of criminal possession of a pistol or revolver to be served consecutively. The total effective sentence was sixty-five years. The defendant appeals from this judgment. Additional facts will be set forth as necessary.

I

## SUFFICIENCY OF THE EVIDENCE

We first consider the defendant's claim that the evidence was insufficient for the jury and court to return verdicts of guilty as to all five counts. The defendant's argument is twofold. First, he argues that the jury could not rely on Lofton's testimony because it was "physically impossible" for it to be true. Second, he argues that without Lofton's testimony, the remaining circumstantial evidence was insufficient to prove that the defendant was guilty of any of the offenses charged. We disagree.

A

We begin with the defendant's claim that it was physically impossible for Lofton's testimony to be true. The defendant's claim is not actually one of physical impossibility, but rather is a challenge to Lofton's credibility and an argument that the jury could draw only one inference about where the shooting occurred based on the location of the expended shell casings. Prior to

analyzing the sufficiency of the evidence claim, we explain why the defendant's physical impossibility claim fails.

The defendant's physical impossibility claim turns entirely on where the shooting occurred. The following additional facts are relevant to this issue. Lofton was the only eyewitness to the shooting and at the time he testified, he was twenty years old and testifying pursuant to a subpoena. The building at 518–526 Howard Avenue is an apartment building, and in between each unit on the ground floor are recessed alcoves. Each alcove is about twenty feet deep and ten feet wide, and is enclosed on three sides by the walls of the building. Police found the victim's belongings and the expended nine millimeter shells in the alcove between apartment 518 and 522. Lofton said that he could not see into this alcove, but was able to see if people exited from it. The defendant asserts that the location of the expended shells conclusively proves that the shooting took place in this alcove, into which Lofton could not see.

The state called two witnesses with firearms experience, who testified as to where the six shells were found and their relation to where the shots were fired. One witness, Detective Omaida Nieves, testified that where the six shells and blood were found in the alcove did not prove that the shots were fired from that location. James Stephenson, a firearms expert from the state forensic science laboratory, testified that it was impossible to determine the ejection pattern of a firearm without knowing several variables, such as the type of firearm and the position of the shooter's hand upon firing. He refused to speculate as to where the shots were fired from based upon the location of the six shell casings.

The defendant asserts that the "[the experts' testimony] established that the only shots fired occurred in the alcove, not in the parking lot driveway area as claimed by Lofton. The shots were fired from a place that Lofton concededly could not see into." A review of Nieves' and Stephenson's testimony reveals that the defendant bases his claim not on facts in the record, but on his own conclusory assertions about the inferences that should be drawn from where the shells were found. The defendant relies principally upon *State* v. *Hammond*, 221 Conn. 264, 276–78, 604 A.2d 793 (1992), in which the defendant prevailed on his claim of physical impossibility because the DNA and blood type evidence conclusively established that the defendant could not have committed the crime. In the present case, however, it is entirely possible that the victim was running away from the alcove when he was shot and that the defendant was standing in a place where Lofton could see him. Thus, whether Lofton saw the defendant shoot the victim is a matter of credibility, not impossibility.

"[B]ecause the jury has the opportunity to observe the conduct, demeanor and attitude of the witnesses and to gauge their credibility, [i]t is axiomatic that evidentiary inconsistencies are for the jury to resolve, and it is within the province of the jury to believe all or only part of a witness' testimony." (Internal quotation marks omitted.) *State* v. *Morgan*, 274 Conn. 790, 800, 877 A.2d 739 (2005). After concluding that the physical evidence did not preclude Lofton from having seen the shooting, "[o]n appeal we cannot revisit the jury's decision to believe the witness."[2] *State* v. *Robinson*, 125 Conn. App. 484, 489, 8 A.3d 1120 (2010), cert. denied, 300 Conn. 911, 12 A.3d 1006 (2011). Thus, the defendant's claim that Lofton's testimony should have been rejected based on physical impossibility fails.

B

We next turn to the sufficiency of the evidence, including Lofton's testimony, as to each of the defendant's convictions. "The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Mendez*, 154 Conn. App. 271, 275–76, 105 A.3d 917 (2014).

First, the defendant's challenge to the murder conviction fails because Lofton's testimony and the circumstantial evidence were sufficient to establish the defendant's guilt. "To establish a violation of § 53a-54a, the crime of murder, the state must prove beyond a reasonable doubt that the defendant, with intent to cause the death of another person . . . cause[d] the death of such person . . . . [T]he specific intent to kill is an essential element of the crime of murder. To act intentionally, the defendant must have had the conscious objective to cause the death of the victim. . . . Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Citation omitted; internal quotation marks omitted.) *State* v. *Lisboa*, 148 Conn. App.

769, 775, 85 A.3d 1244 (2014).

Lofton's testimony alone was sufficient for the jury to find the defendant guilty of murder as it reasonably allowed the jury to infer that the defendant had committed all of the elements of the crime. Lofton testified that the defendant shot the victim three times, causing the victim's death. The jury reasonably could have inferred from Lofton's description of the events that the defendant intended to shoot the victim. See id., 776 ("it is a permissible . . . inference that [the] defendant intended the natural consequences of his voluntary conduct" [internal quotation marks omitted]). It also does not matter that Lofton was the sole witness to the shooting. "The credited testimony of even a single witness may be sufficient to sustain a defendant's conviction." (Internal quotation marks omitted.) *State* v. *Prosper*, 160 Conn. App. 61, 73,     A.3d     (2015); see also *State* v. *Whitaker*, 215 Conn. 739, 757 n.18, 578 A.2d 1031 (1990). The jury also had circumstantial evidence of the defendant's motive and consciousness of guilt to consider along with the eyewitness testimony.

The defendant's challenges to the sufficiency of the circumstantial evidence regarding his motive, consciousness of guilt, and possession of means to commit the crime also fail. The defendant argues that the evidence of Simpson's and his fleeing the scene after the crime and leaving the state days later; his offer of money and marijuana to Lofton; Boxley and Caple's testimony regarding his motive; and, evidence that he possessed a gun in the area of the shooting less than one month before it occurred, are "separately or together" insufficient to support the convictions of guilty beyond a reasonable doubt. While perhaps each "separately" might be insufficient, we disagree that "together" they do not support the jury's verdicts, especially when considered with Lofton's eyewitness testimony that the defendant shot the victim.

At trial, the state claimed that the defendant's flight from Connecticut and use of false names was indicative of his consciousness of guilt. The jury reasonably could infer the defendant's consciousness of guilt from these circumstances. See *State* v. *Silva*, 113 Conn. App. 488, 497–98, 966 A.2d 798 (2009) (jury can infer consciousness of guilt from defendant's flight); *State* v. *Martinez*, 95 Conn. App. 162, 189, 896 A.2d 109 (jury can infer consciousness of guilt from use of alias), cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006). The jury also reasonably could have inferred from the circumstances that the defendant's offer of marijuana and money to Lofton was to persuade him not to tell the police about the shooting.

In regard to the testimony about the defendant's motive, he makes similar challenges to the credibility of Boxley and Caple that he made to Lofton. At trial, both initially testified that they did not remember mak-

ing statements to the police relating to the defendant's motive. The jury had all of the evidence and testimony in its deliberations that the defendant now uses on appeal in his challenges to the witnesses' credibility. We again note we will not question the jury's credibility determinations and the conclusions it reached in resolving apparent inconsistencies in the testimony.

The testimony that the defendant possessed a gun in the area weeks prior to the shooting was admitted to show that he possessed the means to commit the crime, and the jury reasonably could have considered it in determining the defendant's guilt.[3]

Second, the defendant's challenge to the conviction of carrying a pistol without a permit fails because the evidence was sufficient for the court to find the defendant guilty beyond a reasonable doubt. Section 29-35 (a) provides in relevant part that: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ." "Accordingly, the required elements of § 29-35 (a) are that the defendant: (1) carried a pistol, (2) for which he lacked a permit, (3) while outside his dwelling house or place of business." (Internal quotation marks omitted.) *State* v. *Davis*, 156 Conn. App. 175, 182, 111 A.3d 567 (2015). At trial, the parties stipulated that the defendant did not have a permit to carry a firearm. Stephenson testified that the murder weapon was a nine millimeter semiautomatic handgun, and the court reasonably could infer from Lofton's eyewitness testimony that the defendant possessed a pistol outside his dwelling or place of business.

Third, in regard to the conviction of criminal possession of a pistol or revolver, General Statutes (Rev. to 2011) § 53a-217c, provided in relevant part: "A person is guilty of criminal possession of a pistol or revolver when such person possesses a pistol or revolver . . . and (1) has been convicted of a felony . . . ." The parties stipulated at trial that as of July 9, 2011, the defendant was a convicted felon. This stipulation and Lofton's eyewitness testimony were sufficient for the court to find the defendant guilty of this count.

Fourth, the defendant claims that there was insufficient evidence to find him guilty of robbery or armed robbery in the first degree and, accordingly, of felony murder. The defendant concedes that the victim's possessions found in the alcove and the fact that his cell phone was missing, considered with the wounds that the victim suffered, allow for the inference that a robbery and murder occurred. Nonetheless, the defendant contends that the evidence was insufficient to convict him of robbery or attempted robbery because "none of this implicated the [him] . . . . No fingerprints, DNA or any evidence identifying [him] as the robber-shooter

was produced."

Section 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery . . . he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime . . . ." Section 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

The defendant's argument fails because it overlooks that "[r]obbery may be proven by circumstantial evidence and the inferences drawn therefrom." *State* v. *Mullings*, 202 Conn. 1, 11, 519 A.2d 58 (1987). At trial, the jury heard testimony from the victim's mother that her son always wore his gold chain because it had sentimental value to him, as well as testimony from her and other witnesses that the victim had his cell phone the day of the shooting and that it was never found. The victim's chain was found intact near the alcove, and the jury reasonably could have drawn the inference proposed by the state in closing argument that the victim would not have removed it because of its sentimental value unless he had been threatened to do so. The jury also could have reasonably inferred that the victim's cell phone was taken, as it was never recovered. These inferences must be considered in light of the testimony that Lofton saw the defendant shoot the victim in the vicinity of where the victim's belongings were recovered. In construing the evidence in the light most favorable to sustaining the verdict, we determine that the jury reasonably could have concluded that the cumulative force of the evidence established the defendant's guilt beyond a reasonable doubt as to the count of robbery or attempted robbery, which served as the basis for the defendant's felony murder conviction.

Mindful that in determining the sufficiency of the evidence we consider its cumulative effect, and construing the evidence in the light most favorable to sustaining the verdict, we determine that the jury reasonably could have concluded that the evidence established the defendant's guilt beyond a reasonable doubt on the counts of murder, felony murder, and robbery, and that the court could have done the same on the counts of possession of a pistol without a permit, and criminal possession of a pistol or revolver.

II

VERDICTS AGAINST WEIGHT OF THE EVIDENCE/
NEW TRIAL REMEDY

The defendant claims that he is entitled to a new trial, arguing that the verdicts were against the weight of the physical evidence. We note that the defendant did not preserve this issue by moving for a new trial pursuant to Practice Book § 42-53, nor does he claim that he is entitled to a new trial based on newly discovered evidence under the framework of Practice Book § 42-55. The defendant seeks review of this claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). However, the defendant's claims regarding the physical evidence are substantively identical to the claims we considered in part I of this opinion. Furthermore, the defendant concedes in his brief that this claim turns on whether we discredit Lofton's testimony, as he stated "should this court agree with the defendant that Lofton's testimony must be rejected but find nevertheless that other evidence was sufficient to prove guilt, the defendant claims that the verdicts should be set aside and the lesser relief, which is to order a new trial, is required." As we concluded in part I of this opinion, we are aware of no reason that prohibited the jury from crediting Lofton's testimony. For this reason, this claim fails.[4]

## III

## PRIOR MISCONDUCT EVIDENCE

The defendant next claims that the trial court abused its discretion by admitting evidence that he had previously displayed a gun to prove that he possessed the means to commit the crimes. He argues that the trial court erred for three reasons: (1) the witness' description of the gun she saw was different from that of the murder weapon, (2) the purported misconduct was too remote in time, and (3) the prejudice outweighed the probative value. We disagree.

The following additional facts are relevant to this claim. The defendant filed a pretrial motion to compel the state to provide notice of its intention to use evidence of his prior misconduct. The state apprised the defendant of its intention to offer the testimony of a "female friend of the defendant's girlfriend" describing a confrontation during which the defendant displayed a gun. The female friend was Caprie Ford, Nicky Boxley's cousin. At trial, the state made an offer of proof outside the presence of the jury. Ford saw the defendant with Hargrove at the circus in Milford on June 14 or 15, 2011,[5] and when she later saw him in the Putnam Street area she confronted him about his having been with a woman other than Nicky Boxley. The defendant walked away from Ford, but returned minutes later pointing at her what "looked like a little gun" and threatened to shoot her. Ford could see only a portion of the barrel because the defendant covered the rest of it with his sleeve, but stated that she was sure it was a real gun. When cross-examined, Ford testified that she could tell

what the defendant displayed was not a toy gun because it was metal, but she was not sure of whether the weapon was a revolver or a semiautomatic pistol. She testified that all that she saw was the "small," "skinny" "nozzle of the gun" and a part of the barrel.

The state offered this testimony pursuant to § 4-5 (b) of the Connecticut Code of Evidence to show that the defendant possessed the means to commit the crimes charged. Defense counsel argued that the court should preclude Ford's testimony because there was no showing that what she saw was the murder weapon, that the incident was too remote in time to the shooting of the victim, and that there was not an adequate showing that what Ford saw was even a gun. The court noted that under *State* v. *Rosario*, 99 Conn. App. 92, 104, 912 A.2d 1064, cert. denied, 281 Conn. 925, 918 A.2d 276 (2007)**,** there is no requirement that evidence of a means to commit the crime must involve the actual weapon used in the crime. The court determined that the evidence was admissible, and that its probative value outweighed its prejudicial effect. It stated it would give a limiting instruction after its admission. The jury then heard Ford testify about the incident, including the defendant's having threatened to shoot her with the gun. She described the gun in the same manner. The court then gave a limiting instruction.

The standard of review regarding uncharged misconduct evidence is well established. "Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. . . . Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . . Since the admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. . . . We will reverse a trial court's decision only when it has abused its discretion or an injustice has occurred." (Internal quotation marks omitted.) *State* v. *Pena*, 301 Conn. 669, 673–74, 22 A.3d 611 (2011).

"Evidence indicating that an accused possessed an article with which the particular crime charged may have been accomplished is generally relevant to show that the accused had the means to commit the crime."

(Internal quotation marks omitted.) *State* v. *Green*, 62 Conn. App. 217, 240, 774 A.2d 157 (2001), aff'd, 261 Conn. 653, 804 A.2d 810 (2002). "The state does not have to connect a weapon directly to the defendant and the crime. *It is necessary only that the weapon be suitable for the commission of the offense. . . . State* v. *Sivri*, 46 Conn. App. 578, 584, 700 A.2d 96, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997)." (Emphasis added; internal quotation marks omitted.) *State* v. *Pena*, supra, 301 Conn. 675.

First, we are not persuaded by the defendant's argument that the court could not conclude that what Ford saw in the defendant's possession was a gun based on her description. Ford stated that she saw a "real gun" and a "metal barrel," and the court also noted that defense counsel would have the opportunity to cross-examine her. The trial court had a sufficient factual basis to allow the admission of this testimony, and its decision was not an abuse of discretion.

The defendant argues that Ford's description of the gun was not sufficiently similar to type used to shoot the victim. He highlights that in *State* v. *Sivri*, supra, 46 Conn. App. 585, the victim's wounds were caused by a large caliber gun, and the evidence offered that the defendant had the means to commit the crime were large caliber weapons. He points out that in *State* v. *Pena*, supra, 301 Conn. 675, the connection between the murder weapon and the means to commit the crime evidence was more similar, as both weapons were described as "black pistols." The defendant's conclusion is that in the present case "there are no such similarities here where the barrel [that Ford described] was shown to be very different from the murder weapon."

Much of the defendant's effort to distinguish the present case is premised on the defendant's speculation that Ford only possibly could have seen a revolver, not a pistol. Stephenson determined that the gun used to kill the victim was a nine millimeter semiautomatic pistol. Comparing Ford's description of the weapon she saw in the defendant's possession with the testimony and evidence regarding the murder weapon, we conclude that the trial court did not abuse its discretion in determining that it was relevant to show that the defendant possessed the means to commit the crime. The jury reasonably could have inferred from Ford's testimony that she saw a handgun, and at that time, the defendant possessed a weapon suitable for the commission of the offense charged.

The defendant's challenge to the relevance of the confrontation between the defendant and Ford as too remote in time also fails. There is no bright line governing when a defendant's possession of the means to commit the crime is too remote to be relevant. "In *Sivri*, we held that the evidence that the defendant was in

possession of guns and ammunition three days after the disappearance of the victim permitted the jury to infer that the defendant had possessed the guns three days earlier." *State* v. *Stevenson*, 53 Conn. App. 551, 572, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999). In *Stevenson*, the victim was shot with a nine millimeter handgun, and testimony that the defendant possessed handguns a couple of weeks later was admissible to show that the defendant possessed the means to commit the crime. Id., 571–72. In *Pena*, the murder weapon was a black pistol, and our Supreme Court concluded that the trial court did not abuse its discretion in admitting testimony that the defendant had access to a black pistol approximately three months before shooting the victim. *State* v. *Pena*, supra, 301 Conn. 675–76. In the present case, the confrontation with Ford occurred approximately three weeks before the shooting, which was not too remote in time to be relevant.

We next examine whether the prejudicial effect of the admission of Ford's testimony outweighed its probative value. "[E]vidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *Rosario*, supra, 99 Conn. App. 104.

We conclude that the court properly balanced the probative value of the evidence of the defendant's prior possession of a firearm sufficient to commit the charged crimes against its prejudice to the defendant. Furthermore, the court gave a limiting instruction explaining to the jury the limited purpose for which it could use Ford's testimony. See *State* v. *Sivri*, supra, 46 Conn. App. 583. The defendant asserts that unfair prejudice resulted from the jury being allowed to hear that Ford saw the gun in the context of the defendant's threatening to shoot her. While the court in *Pena* concluded that one reason admission of the defendant's prior possession of a gun was not unduly prejudicial was because "[t]he testimony did not establish that the defendant previously had harmed or threatened any person, acted violently, or otherwise call into question the defendant's character"; *State* v. *Pena*, supra, 311 Conn. 676; we note that the defendant in the present case did not seek to limit Ford's testimony. He did not raise this issue in the state's offer of proof, nor did he object when Ford testified to the entire incident in front of the jury. We thus conclude that the court did not abuse its discretion in admitting Ford's testimony regarding the defendant's possession of the means to commit the crime.[6]

IV

## PROSECUTORIAL IMPROPRIETY

The defendant next claims that he is entitled to a new trial due to prosecutorial impropriety. Specifically, the defendant claims that the prosecutor in closing arguments (1) misstated Council's testimony regarding her observation of the victim falling down, (2) misstated the testimony of the medical examiner, (3) misstated Boxley's testimony regarding the defendant's motive to take the victim's gold chain, and (4) argued that the prior misconduct evidence showed motive when its only admissible purpose was to show possession of the means to commit the crime. The defendant did not object during closing argument, nor did he seek a curative instruction on any of the alleged improprieties.

The applicable law governing claims of prosecutorial impropriety is well established. "[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step process. The two steps are separate and distinct: (1) whether [an impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived [the] defendant of his due process right to a fair trial. Put differently, [an impropriety is an impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) *State* v. *Andrews*, 313 Conn. 266, 279, 96 A.3d 1199 (2014).

The defendant's first claim of impropriety involves the prosecutor's summation of Council's testimony in his closing rebuttal argument. Council testified that, after she heard gunshots, she saw the victim run, spin around, and fall down where emergency medical personnel found him. The prosecutor stated "you heard about Miss Council saying what she saw and she claims she was good friends with [the victim] and saw him running and get shot and turn and landed on his back." The defendant argues that the prosecutor engaged in impropriety because Council did not testify that she actually saw the victim get shot. We disagree.

"We long have held that a prosecutor may not comment on evidence that is not a part of the record and may not comment unfairly on the evidence in the record." *State* v. *Fauci*, 282 Conn. 23, 49, 917 A.2d 978 (2007). However, the prosecutor "may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 429, 902 A.2d 636 (2006). Furthermore, "[c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of

argument." (Internal quotation marks omitted.) Id., 428. "While a prosecutor is not permitted to interject his own opinion generally, he must be permitted to speak to the cumulative evidence he has put forth during the course of trial. . . . Likewise, [w]e must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. The state's attorney should not be put in the rhetorical straightjacket of always using the passive voice, or continually emphasizing that he is simply saying I submit to you that this is what the evidence shows, or the like." (Citation omitted; internal quotation marks omitted.) *State* v. *Ivan G.S.*, 154 Conn. App. 246, 255–56, 105 A.3d 905 (2014), cert. denied, 315 Conn. 923, 108 A.3d 1123 (2015).

In the circumstances here, we find that the prosecutor was merely arguing the inferences that the jury reasonably could draw in considering the cumulative evidence. The defendant relies on *State* v. *Fauci*, supra, 282 Conn. 49, in which the prosecutor in rebuttal argument definitively asserted the identity of a "mystery woman" that one of the defendant's witnesses refused to identify, although there was no evidence in the record that supported the prosecutor's assertion. Id., 49–50. In the present case, the prosecutor did not propose an unreasonable or unfair inference, nor did he make an assertion that was unsupported by the record. Council testified that she saw the victim fall down at the location where emergency medical personnel treated the victim for gunshot wounds. The jury reasonably could infer from the circumstances when Council testified that she saw the victim fall, she actually saw the moment when he got shot.

Second, the defendant's claim that the prosecutor improperly misstated the medical examiner's testimony also fails. The defendant's theory of the case was that the shooting occurred in the alcove, out of Lofton's view, and the victim then ran while injured and fell at the spot where the firefighters found him. Evangelista gave testimony that supported the theory that the defendant could have moved after being shot, stating, "there's no such injury such as like a spinal cord, or a brain injury where it would make a person unable to move or walk, so in my opinion, yes, he could ambulate or walk or run for some time." However, Evangelista also stated "if he didn't [move] it wouldn't surprise me either." In regards to the wounds, he could not determine the sequence of the three gunshots, but stated that the wound to the back and through the chest was the fatal one, as it perforated the apex of the victim's heart.

In rebuttal argument, the prosecutor stated:

"[R]emember something else that Dr. Evangelista told you. That was the fatal wound. It perforated the apex of his heart and this would have likely brought him down quickly . . . . If he got shot in the alcove and all these shots happened in the alcove how did he make it that far? He wouldn't have run that far with that type of wound. It had to happen after he got out of the alcove, and therefore Mr. Lofton told you that from here he could see . . . people coming out of the alcove area. . . . He made it out of there and that's why Mr. Lofton was able to see this defendant and see [the victim]."

The defendant's argument is essentially that because the medical expert testified that the victim *could have* moved after being shot, that the only logical inference that the prosecutor could propose and the jury could draw is that the victim did move. This overlooks Evangelista's testimony that he would not have been surprised if the victim fell immediately after being shot. The proposed inferences were not unfair or unreasonable, and this portion of the prosecutor's rebuttal argument was not improper.

Third, the defendant claims that the prosecutor engaged in impropriety by summarizing Boxley's and Caple's testimony regarding the defendant's motive, arguing that their testimony could be used only for impeachment purposes. We disagree.

The following additional facts are relevant to this claim. Both Boxley and Caple initially testified that they did not remember giving statements to police regarding the defendant's motive to steal the victim's chain, and the prosecutor eventually presented them with portions of their statements. During the state's direct examination of both witnesses, the jury heard their statements regarding the defendant's motive.

The defendant's argument is that both Boxley's and Caple's prior statements were not substantively admissible evidence and could be used only for impeachment purposes. However, the defendant did not seek to limit the grounds of admissibility, nor did he preserve these claims. It is well established that "[a]n appellate court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." (Internal quotation marks omitted.) *State* v. *Cromety*, 102 Conn. App. 425, 431, 925 A.2d 1133, cert. denied, 284 Conn. 912, 931 A.2d 932 (2007). "[A] defendant may not transform an unpreserved evidentiary claim into one of prosecutorial impropriety to obtain review of that claim." Id. Because the defendant did not seek to limit the scope of their testimony, it was not improper for the prosecutor in closing argument to invite the jury to draw substantive inferences of the defendant's motive from their statements. See *State* v. *Rowe*, 279 Conn. 139, 152, 900 A.2d 1276 (2006) ("[a]rguing on the basis of evidence explicitly admitted

cannot constitute prosecutorial [impropriety]").

The defendant's final claim is that the prosecutor engaged in impropriety by arguing that the evidence of the defendant's possession of the means to commit the crime also demonstrated the defendant's character and propensity to commit the crimes. The state concedes that the prosecutor's statements on this subject in his initial and rebuttal closing arguments were improper.[7] However, we conclude that these comments did not deprive the defendant of a fair trial.

"Our Supreme Court has indicated that the determination of whether any improper conduct by the [prosecutor] violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, [204 Conn. 523, 540, 529 A.2d 653 (1987)], with due consideration of whether that [impropriety] was objected to at trial. . . . These factors include [1] the extent to which the [impropriety] was invited by defense conduct or argument, [2] the severity of the [impropriety], [3] the frequency of the [impropriety], [4] the centrality of the [impropriety] to the critical issues in the case, [5] the strength of the curative measures adopted, and [6] the strength of the state's case." (Internal quotation marks omitted.) *State* v. *James E.*, 154 Conn. App. 795, 816–17, 112 A.3d 791 (2015).

The defendant did not invite the impropriety, as the prosecutor made the improper remarks in both his initial and rebuttal closing argument. See *State* v. *Alexander*, 254 Conn. 290, 308, 755 A.2d 868 (2000). The improprieties were not frequent, as the prosecutor made the improper remarks about Ford's testimony in relatively brief instances, once each in his initial and rebuttal closing arguments. The remarks also were not severe, as "we consider it highly significant that defense counsel failed to object to any of the improper remarks [or] request curative instructions . . . . Defense counsel, therefore, presumably [did] not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 479, 832 A.2d 626 (2003).

The central issue in this case was the identity of the shooter. The defendant asserts that the inference could have affected the jury's determination that the defendant was the shooter. Even if that were true, the jury had the far more probative testimony of Lofton to consider in determining whether the defendant was the shooter, as well as testimony relating to the defendant's motive and circumstantial evidence of the defendant's consciousness of guilt. We are not persuaded that the jury would have reached a different conclusion about the shooter's identity had it not heard the brief improper remarks.

Although the trial court did not give specific curative

instructions, "[w]e note in this regard . . . that the defendant, by failing to bring them to the attention of the trial court, bears much of the responsibility for the fact that these claimed improprieties went uncured. We emphasize the responsibility of defense counsel, at the very least, to object to perceived prosecutorial improprieties as they occur at trial, and we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was unfair in light of the record of the case at the time." (Internal quotation marks omitted.) Id., 483. The trial court gave the general instruction to the jury not to consider the arguments of counsel as evidence. "In the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them." (Internal quotation marks omitted.) Id., 485.

Finally, the state's case against the defendant was relatively strong. "The state's evidence does not need to be overwhelming to support a conclusion that prosecutorial impropriety did not deprive the defendant of a fair trial." *State* v. *Felix*, 111 Conn. App. 801, 816, 961 A.2d 458 (2008). Putting aside any potential influence of the improper remarks, the jury had Lofton's eyewitness testimony, as well as circumstantial evidence of the defendant's consciousness of guilt and the testimony of two witnesses regarding the defendant's motive. On the basis of our analysis of the *Williams* factors, we conclude that the improper remarks did not deprive the defendant of a fair trial.

V

VACATUR OF FELONY MURDER CONVICTION

The defendant claims that the trial court erred in merging his convictions for murder and felony murder. The state concedes that *State* v. *Miranda*, 317 Conn. 741, 751, 120 A.3d 490 (2015), which was pending in our Supreme Court when this appeal was filed, controls this issue. Pursuant to *Miranda*, we reverse the judgment in part and remand the case to the trial court with the direction to vacate the defendant's felony murder conviction.

VI

CORRECTION OF THE JUDGMENT FILE

The defendant's final claim is that the judgment file must be corrected because the trial court deprived him of his right to a unanimous verdict in instructing jurors that on the charge of robbery or attempted robbery the jury did not have to be unanimous as to which theory it found the defendant guilty, as long as it was unanimous as to one of them. We disagree.

*State* v. *Jones*, 193 Conn. 70, 475 A.2d 1087 (1984), is instructive on this claim. In *Jones*, the indictment

stated that under the felony murder statute "the defendant *did commit or attempt to commit a robbery* and in the course of and in furtherance of such crime or flight therefrom he, or another participant, caused the death of a person . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 75. This did not violate the defendant's right to a unanimous verdict because "[w]hile some jurors might have believed that the defendant attempted the robbery but did not complete it, and others might have believed that he did, in fact, complete the crime, none could have believed that the defendant completed the robbery without first undertaking a substantial step toward achieving its object. The unanimous verdict of guilty thus necessarily encompassed a unanimous finding that the defendant had at least attempted to commit robbery." Id., 76–77. That analysis is directly applicable to the present case.[8]

Furthermore, the defendant has not demonstrated what relief he would receive through a correction of the judgment file. The defendant was charged with a single count of "robbery or attempted robbery in the first degree" in violation of §§ 53a-49 (a) (2) and 53a-134 (a) (1). Both theories could serve as the predicate felony for the conviction of felony murder. See General Statutes § 53a-54c. General Statutes § 53a-51 states that except for class A felonies, attempt is a crime "of the same grade and degree as the most serious offense which is attempted." Section 53a-134 states that robbery in the first degree is a class B felony, thus making attempt to commit robbery in the first degree a class B felony. The defendant faced the same punishment under either theory. See *State* v. *Holliday*, 118 Conn. App. 35, 42, 982 A.2d 268 (2009) ("[t]he legislature clearly intended attempt . . . to commit a class B felony to be punished the same as a class B felony or it would have noted otherwise, as it did with class A felonies"), cert. denied, 295 Conn. 909, 989 A.2d 605 (2010). For this reason, this claim fails.

The judgment is reversed in part and the case is remanded with direction to vacate the felony murder conviction; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The joker medallion, dangling from the chain, depicts a court jester with hands and legs extended.

[2] The defendant challenges Lofton's credibility, asserting that his testimony was inconsistent in some instances with his initial statement to police. Cross-examination revealed that police had some concerns that Lofton's initial statements were not completely consistent with the other evidence that they found, but Lofton stated multiple times on the witness stand that he was sure he saw the defendant shoot the victim.

Regarding the details of the shooting, Lofton testified that he saw the victim get shot in the chest, while the medical examiner, Frank Evangelista, forensic pathologist, testified that the fatal shot entered through the victim's back. However, Lofton stated his conclusion that the victim was shot in the chest was based on seeing blood in the chest area of the defendant's shirt.

The defendant contends that Lofton's testimony was contradicted by Council, who stated that she saw the victim running from the direction of

the alcove, spin, and then fall at the area where he was eventually found in the parking lot. Lofton stated that the defendant was stationary at the time he was shot. Defense counsel had the opportunity to cross-examine Lofton on all of these issues. On appeal, we will not second-guess the jury's decision about which witnesses it chose to believe, nor its conclusions in resolving apparent inconsistencies in the evidence and testimony.

[3] The defendant challenges the admissibility of this testimony, which we consider in part III of this opinion. He argues specifically that the witness who testified that she saw the defendant's prior possession of a gun did not describe a gun that was sufficiently similar to the weapon the defendant allegedly used to shoot the victim.

[4] We decline the defendant's additional request to order a new trial through the use of our supervisory authority.

[5] The parties stipulated at trial that the Coleman Brothers Circus took place at the Milford Post Mall on June 14 and 15, 2011.

[6] Even if we were to conclude that the court abused its discretion and improperly admitted Ford's testimony concerning the defendant's prior possession of the handgun, we would conclude, nevertheless, that it was harmless error. "[W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, [including] . . . the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial." (Internal quotation marks omitted.) *State* v. *Rosario*, supra, 99 Conn. App. 105–106 n.9. Contrary to the defendant's assertions, we find that the state's case was relatively strong. Putting aside Ford's testimony, the state presented Lofton's eyewitness testimony that he saw the defendant shoot the victim. This was coupled with Boxley's and Caple's testimony regarding the defendant's motive, as well as circumstantial evidence of the defendant's consciousness of guilt.

[7] In his initial closing argument, the prosecutor stated: "Within just weeks before Mr. James is shot and killed in that area this defendant has access to a firearm. Not only is it important that he had access to the firearm but remember what Miss Ford said, they had an argument in the street over something relatively stupid and she says the defendant walked away. . . . So that means he walked and came back and within five minutes what did he have? He had the knob of a gun at the end of his sleeve pointing it within two feet of Miss Ford . . . ."

In his rebuttal argument the prosecutor stated "it's important to think about motive and means because if a few weeks before Mr. James got shot this defendant is willing to pull a gun and threaten to shoot Caprie Ford in the same area where this happened. What can you tell about that? Over something as dumb as an argument about a girl. And remember, he was only gone for five minutes. Does that show he had a gun in that area? What can you infer from that?"

We agree that the prosecutor in his closing arguments improperly used Ford's testimony to propose inferences regarding the defendant's character and propensity to commit the crimes.

[8] The defendant relies on *State* v. *Gould*, 241 Conn. 1, 23–24, 695 A.2d 1022 (1997), which is inapplicable because unlike in the present case, the defendant in *Gould* was convicted of robbery and attempted robbery alleged as separate counts, and sentenced to separate concurrent sentences. Our Supreme Court held that the attempted robbery conviction, as a lesser included offense, had to be merged with the robbery conviction.